**Armando REYNA, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

No. 2005–CA–000757–MR.

Court of Appeals of Kentucky.

Feb. 23, 2007.

Jaehoh Suh, Van Nuys, CA, Louis W. Rom, Lexington, KY, for Appellant.

Gregory D. Stumbo, Attorney General of Kentucky, Robert E. Prather, Assistant Attorney General, Frankfort, KY, for Appellee.

Before COMBS, Chief Judge; WINE, Judge; PAISLEY,[1] Senior Judge.

## OPINION

PAISLEY, Senior Judge.

Armando Reyna appeals from an order of the Montgomery Circuit Court denying his motion filed pursuant to CR 60.02 seeking to vacate a judgment of conviction entered after he pleaded guilty to assault under extreme emotional disturbance. He argues that his plea was not voluntarily, knowingly and intelligently entered because, at the time he entered his plea, he was unaware that following the completion of his sentence, he would be permanently deported from the United States.

Reyna is a citizen of Mexico but, at the time of his plea, had been a legal resident-alien of the United States since infancy and possessed a green card for the last 17 years. He is married and has two children. Despite his lengthy residential status, Reyna had never applied for citizenship.

---

**1.** Senior Judge Lewis G. Paisley sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

In 1999, he was involved in a physical altercation and, as a result, faced a charge of assault, first degree. Pursuant to a plea agreement, Reyna pleaded guilty to assault under extreme emotional disturbance and was sentenced to five years' imprisonment. The record reveals that at the time of the plea, the court informed Reyna of his *Boykin* rights and that Reyna signed a "Motion to Enter Guilty plea", in which he acknowledged that he understood the charge and waived his constitutional rights, including the right to a jury trial. He further acknowledged that the plea was knowingly and voluntarily entered. The only challenge he now makes to the validity of the plea is that he was not informed that, as a result of his conviction, he was subject to deportation.

Reyna was released from custody on July 11, 2003; as a non-citizen, however, following the service of his sentence, Reyna was subject to automatic deportation and was, in fact, deported to Mexico. 8 U.S.C. Sect. 1227(a)(iii). Following his deportation, Reyna illegally re-entered the United States and was detained by the United States Department of Homeland Security and now faces a twenty-year jail sentence.

On January 15, 2004, Reyna filed an RCr 11.42 motion seeking to vacate the judgment of conviction claiming that his guilty plea was not knowing and voluntary and that he received ineffective assistance of counsel because he was not informed of his possible deportation. In the alternative, he requested that his sentence be reduced to 364 days so that the automatic federal deportation provisions would not be triggered. The court denied the motion on the basis that Reyna had served his sentence before filing the RCr 11.42 motion. *Wilson v. Commonwealth*, 403 S.W.2d 710 (Ky.1966).

In a second attempt to obtain post-conviction relief, Reyna filed a motion pursuant to CR 60.02 repeating the same grounds for relief as set forth in his RCr 11.42 motion but with the additional contention that the failure to be informed of the consequences of his plea on his immigration status constituted a basis for "extraordinary relief". Following the court's denial of that motion, and the denial of two subsequent motions to reconsider, he filed yet another Cr 60.02 motion on the same grounds. That motion was denied on March 11, 2005, and this appeal followed.

Reyna contends that had he been aware that his guilty plea would result in deportation, he would not have pleaded guilty but would have insisted on going to trial. Deportation, he contends, is such a severe consequence that prior to entering his plea he had the right to be informed of the applicable immigration laws. *See Brady v. United States*, 397 U.S. 742, 90 S.Ct. 1463, 25 L.E.2d 747 (1970).

We recognize the plight of immigrants convicted of felonies who are subject to the federal deportation laws. Whether their prison sentence is only for 365 days or for a *much longer period, the result is the same.* Indeed, the prospect of leaving behind the life established in this country can be a more devastating consequence than the sentence of imprisonment imposed. Reyna points out that other jurisdictions have adopted rules that require that the trial court advise an alien defendant entering a guilty plea of the possible deportation consequences and that, in a proposed change to RCr 8.08, the Kentucky Supreme Court sought to add similar language. Although that rule change was not adopted, the current Administrative Office of the Courts guilty plea form incorporates language advising such defendants that they may be subject to adverse immigration laws.

The better practice is, we believe, for non-citizens to be informed of the immigration consequences of a guilty plea. However, the issue presented cannot be decided on the basis of a more desirable outcome but must be premised on established legal precedent. Unfortunately for Reyna, the law does not support his request for relief.

Reyna's motion was brought pursuant to CR 60.02(f) which provides that it must be brought within a "reasonable time" and is to be granted only if there are "extraordinary circumstances justifying relief." In *Commonwealth v. Bustamonte,* 140 S.W.3d 581 (Ky.App.2004), pursuant to CR 60.02(f) the trial court reduced Bustamonte's sentence from two concurrent twelve-month terms to two concurrent 364–day terms on the basis that the failure of counsel to inform him of the consequences of his plea on his immigration status constituted a reason of an extraordinary nature which justified relief. Emphasizing that CR 60.02(f) must be invoked with extreme caution and only under the most unusual of circumstances, this court found that the trial court abused it discretion and reversed its order. In doing so it was stated that: "A defendant's apparent immigration problem 'is not a reason of an extraordinary nature justifying relief' ...." *Id.* at 583.

Subsequent to the *Bustamonte* decision, the Kentucky Supreme Court was confronted with a similar issue in *Commonwealth v. Fuartado,* 170 S.W.3d 384 (Ky. 2005). The court held that there is no constitutional requirement that the trial court advise a criminal defendant of the collateral consequences of a guilty plea. Deportation, the court held, is one such collateral consequence. *Id.* at 385.

The existence of collateral consequences is irrelevant to the determination of defendant's guilt or innocence and completely outside the authority or control of the trial court. *Id.* at 386.

The failure of defense counsel to inform the defendant of the potential immigration consequences, the court held, was not cognizable as a claim for ineffective assistance of counsel. *Id.*

Reyna argues that his situation is different than that in *Bustamonte* and *Fuartado* because he was actually deported and re-arrested. Thus, he argues, he is actually suffering the consequences of his plea on his immigration status. Although Reyna makes a sympathetic argument, and now faces a twenty-year prison sentence, his present dilemma is the result of his illegal re-entry into the United States. Furthermore, we are not persuaded that because Reyna was deported, his circumstances are sufficiently distinguishable from those in *Bustamonte* and *Fuartado.* Whether deportation is a possibility or it actually occurs, the consequence of a guilty plea on the defendant's immigration status remains a collateral consequence.

■ Because precedent establishes that the failure to inform a defendant of deportation consequences has no constitutional implications and is collateral to the guilty plea proceeding, there is no requirement that counsel or the court inform a defendant of those consequences at the time a guilty plea is entered. It cannot, therefore, constitute sufficient grounds for extraordinary relief under CR 60.02(f).

■ We also believe that the motion, not filed until after Reyna had served his sentence and four years after he entered his guilty plea, was untimely. Although not stated as reason for the denial of his CR 60.02(f), the trial court would certainly have been within its discretion had it held that the motion was not brought within a reasonable time. *Gross v. Commonwealth,* 648 S.W.2d 853 (Ky.1983).

For the forgoing reasons, the denial of Reyna's CR 60.02(f) motion is affirmed.

WINE, Judge, concurs.

COMBS, Chief Judge, Concurs and Files Separate Opinion.

COMBS, Chief Judge, concurring:

This case highlights the compelling necessity for Kentucky to re-visit the issue of what due process entails for non-citizens embroiled in our judicial process. It is patently ridiculous—if not insulting—to posture and contend that the miseries flowing from deportation in this case were merely "collateral" and inconsequential. They were indeed more heart-wrenching and destructive perhaps than any prison sentence.

It would be a minor burden—a mere detail—for a court to add one more element to its *Boykin* colloquy: namely, a clear explanation of the possibility of deportation as a result of the entry of a guilty plea. Due process cries out for such a requirement.

The human consequences flowing from deportation are enormous and must be weighed in the balance when determining whether a plea is voluntarily and intelligently entered. To pretend otherwise is to dishonor the hallowed place that due process occupies for all who come before our courts. Its importance should not be dismissed or diminished simply because an accused is a non-citizen whose injured rights can be cavalierly characterized as "collateral damage."

We should be ashamed at such an outcome. Our Supreme Court or our General Assembly clearly should address this grievous gap in the law.