### REYNOLDS METALS CO. v. BARKER.

Court of Appeals of Kentucky.
March 13, 1953.

Fred R. Edney, Louisville, for appellant.
Horace Barker, Louisville, for appellee.

COMBS, Justice.

The Commercial Lithographing Company filed suit against the appellee, Edith Barker, for $768 representing the balance due on certain patterns prepared by the Lithographing Company and delivered to Mrs. Barker for use in etching aluminum trays. Mrs. Barker made her answer a cross-petition against the appellant, Reynolds Metals Company, and A. C. Kintner, an employee of Reynolds. At the conclusion of the testimony the court directed a verdict in favor of the Lithographing Company for the amount of its claim. A verdict was also directed for the defendant Kintner and he is not a party to this appeal.

The issue whether Mrs. Barker or Reynolds Metals Company should pay the Lithographing Company's debt was submitted to the jury. The jury found for Mrs. Barker and judgment was entered against Reynolds in the amount of $768. On this appeal Reynolds contends the court erred in failing to direct a verdict in its favor; admitted incompetent evidence; gave erroneous instructions to the jury.

The testimony is conflicting but the facts are, in substance, as follows: In the summer of 1949 Mrs. Barker was an unpaid local craft leader in her homemakers' club in Jefferson County and suggested to the club a program of etching aluminum in making trays. The program became popular and was adopted by other homemakers' clubs in Jefferson County, having a membership of some 1200 women. Mrs. Barker obtained the aluminum for making the trays from Reynolds Metals Company and furnished it to the women participating in the program at a small profit to her.

Reynolds Metals Company received notice of the program and became interested in promoting it on a national scale for the purpose of selling more aluminum. On July 20, 1949, Mrs. Barker signed an agreement with Reynolds agreeing to assist in the promotion of the program throughout the country by giving lectures and demonstrations. In return for her services, she was to receive 1% of the gross profit from the sale of aluminum used in the program for a period of one year, and was to have the exclusive distribution rights for the product in Kentucky.

Patterns were essential to the program. Mrs. Barker had been preparing these by a laborious and slow hand method. On September 19, 1949, Reynolds' employee, A. C. Kintner, requested Commercial Lithographing Company to prepare 27,500 copies of the pattern used in the program. The bill was sent to Mrs. Barker and the patterns were sent to her home. It is these patterns about which this controversy arose. Mrs. Barker contends they were to be used in the national program and Reynolds is obligated to pay for them. Reynolds insists they were for Mrs. Barker's use in Jefferson County and that she is obligated to pay for them. At the time the patterns were ordered the

program was in some confusion, with several departments at Reynolds handling the promotion. In order to get the program on an orderly basis, the Reyn-L-Art Corporation was formed on October 4, 1949. Mrs. Barker and her husband owned one-half of the capital stock of the new corporation, and Mr. A. Nicklas, a former employee of Reynolds, owned the balance. The patterns previously ordered from the Lithographing Company were removed to the headquarters of the new corporation. On October 27, 1949, Reynolds, Mrs. Barker, and Nicklas entered into a written contract superseding the original contract between Reynolds and Mrs. Barker, and making other arrangements for the purchase of aluminum by the Reyn-L-Art Corporation. Subsequently, this corporation met with financial difficulties and went into receivership, the creditors receiving 23¢ on the dollar. In the receivership proceedings the court found that Reyn-L-Art Corporation was primarily liable to Commercial Lithographing Company for the patterns in question, and the Lithographing Company was paid its pro rata part of the proceeds from the sale of Reyn-L-Art's assets. The question of liability as between Mrs. Barker and Reynolds for the balance of the debt was not an issue in the receivership proceedings. Ultimately, the Lithographing Company sued Mrs. Barker with the result heretofore mentioned.

 In regard to Reynolds' contention that parol evidence was improperly admitted to contradict or vary the terms of the written contract, the answer is that the contract is silent as to the furnishing of materials and supplies, and as a matter of necessity the court was forced to submit this question to the jury on the evidence introduced by the parties. It is a familiar rule that where the meaning of the contract is not clear or is silent respecting a matter material to the rights of the contracting parties, the intention of the parties as evidenced by the circumstances surrounding the making of the contract may be considered. Morris Shoe Co. v. Coleman, 187 Ky. 837, 221 S.W. 242; Caudill v. City of Maysville, 297 Ky. 78, 178 S.W.2d 945. This rule is applicable here.

The instruction complained of reads in part: "If you believe from the evidence that under the contract between Reynolds Metals Company and Edith Barker, concerning which you have heard evidence, the said Reynolds Metals Company agreed to bear the expense of lithographing patterns to be used in the sale of its aluminum products under said contract, then you should find for the cross-plaintiff, Edith Barker * * *."

█ Reynolds insists that this instruction permitted the jury to construe the written contract, thereby usurping the function of the court. But, as already noted, the contract is silent on the responsibility of the parties for furnishing materials and supplies, and that issue had to be decided on other evidence introduced at the trial. The instruction would perhaps have been in better form had there been no reference to any specific contract, but such reference was mere surplusage and could not have been prejudicial to the rights of either party.

█ The argument that Reynolds was entitled to a peremptory instruction is also based on the theory that under the terms of the contract it was not obligated to furnish these patterns. What has heretofore been said with reference to the silence of the contract on this issue disposes of that question. The issue between the parties was clearly one for the jury, and although the evidence is in sharp conflict it cannot be said that the jury's verdict is flagrantly against the evidence.

We find no merit in the argument that Reynolds' rights were prejudiced by the reference in the instructions to the sale of its products through the use of the patterns.

The judgment is affirmed.