**Mickiel PETE, et al., Appellants**

v.

**Michael ANDERSON, Jr., et al., Appellees.**

**No. 2011–SC–000692–DG.**

Supreme Court of Kentucky.

Nov. 21, 2013.

---

Scott Allen Davidson, James David Ballinger, Louisville, for Appellants.

David Bradley Mour, Zachary Leroy Taylor, Louisville, for Appellees.

Opinion of the Court by Justice ABRAMSON.

Michael Anderson, Jr. and Malik Anderson filed a professional negligence action against attorney Mickiel Pete, the law firm of Cochran, Cherry, Givens, Smith, Sistrunk 85 Sams, P.C., and attorney Dennis Burke (collectively "Pete"), claiming the attorneys were negligent in executing their professional duties following the death of the Andersons' father. The Jefferson Circuit Court granted Pete's motion for summary judgment on the grounds that Michael, Jr. and Malik, minors at the time of their father's death, lacked standing to sue for professional negligence because they did not have an attorney-client relationship with Pete. The Court of Appeals reversed, holding that summary judgment was inappropriate because there was a genuine issue of material fact as to the existence of the alleged attorney-client relationship. The Court of Appeals further held that, in any event, Pete owed professional duties to Michael, Jr. and Malik, who were statutorily-identified beneficiaries of the underlying wrongful death claim. For the reasons discussed fully herein, we affirm.

### RELEVANT FACTS

On October 17, 2001, Michael Anderson was killed when the van that he was driving struck a retaining wall, partially ejecting Anderson from the vehicle. The van, which was owned by Anderson's employer, was equipped with a pedestal-style driver's seat with a locking mechanism that allowed the operator to position the seat. This mechanism was apparently malfunctioning on the day of the fatal accident.

Anderson was survived by his wife Elizabeth and four children, including two minor sons, Michael, Jr. and Malik. Attorney Mickiel Pete was retained to pursue an action against Dixie Warehouse Services, LLC ("Dixie"), the company charged with maintaining the van involved in Anderson's accident. Pete filed a wrongful death claim, naming Elizabeth as personal representative of Anderson's estate ("the estate"), and also filed a loss of consortium claim on Elizabeth's behalf, but did not file a loss of parental consortium claim on behalf of Anderson's children. The Jefferson Circuit Court eventually dismissed the suit after Dixie successfully excluded two of the plaintiffs' expert witnesses on *Daubert* grounds, leaving no evidence of a causal connection between Dixie's conduct and Anderson's death.[1] Pete did not appeal the trial court's decision.[2]

Two years later, Malik, by and through Elizabeth, and Michael, Jr., now of the age of majority, filed a professional negligence action against Pete alleging negligence, gross negligence and breach of fiduciary duty, as well as negligent or fraudulent misrepresentations. Pete moved for summary judgment arguing that there was no attorney-client relationship between Pete and the children, and that any other claims of the estate were barred by the statute of limitations. The trial court granted Pete's motion, finding that Michael, Jr. and Malik were not in privity with Pete, and thus lacked standing to sue for professional negligence.

In a unanimous decision reversing the trial court, the Court of Appeals found that there was a material factual issue in dis-

---

1. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

2. Elizabeth Anderson filed a *pro se* appeal, but it was ultimately dismissed for failing to comply with appellate rules.

pute, namely, whether Malik and Michael, Jr. were actually represented by Pete, or were led to believe that they were being represented by him. In addition to finding that summary judgment was premature, the Court of Appeals held that even if there was no privity, the children were owed professional duties because they were the intended beneficiaries of the underlying wrongful death action. We accepted discretionary review and now affirm the Court of Appeals.

### ANALYSIS

I. **The Trial Court Erred in Granting Summary Judgment Because There Are Issues of Material Fact Regarding the Attorney–Client Relationship.**

 Kentucky Revised Statute ("KRS") 413.245 provides that an action for professional malpractice "shall be brought within one (1) year from the date of the occurrence or from the date when the cause of action was, or reasonably should have been, discovered by the party injured." Elizabeth failed to bring a malpractice action against Pete on her own behalf within the one-year statute of limitations. However, KRS 413.245 further provides: "Time shall not commence against a party under legal disability until removal of his disability." Michael, Jr. and Malik were minors when the alleged malpractice occurred. Therefore, the tolling provision of KRS 413.245 would allow them to timely bring any claim against Pete within one year of achieving the age of majority. Of course, a party may pursue a malpractice action against an attorney only if that party has standing to do so by virtue of being owed professional duties by the attorney. *Marrs v. Kelly*, 95 S.W.3d 856 (Ky.2003).

Pete argues that the trial court correctly granted summary judgment after deter-

mining that Michael, Jr. and Malik, having no attorney-client relationship with Pete, lacked standing to bring the professional malpractice claim. As noted, the Court of Appeals reversed, concluding that a material fact issue existed regarding whether Pete shared an attorney-client relationship with the two minor Anderson children, therefore rendering summary judgment premature.

 The standard of review of a summary judgment is whether the trial court correctly found that there was no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. *Norton Hospitals, Inc. v. Peyton*, 381 S.W.3d 286 (Ky.2012). We will uphold a summary judgment only if after viewing the evidence in the light most favorable to the party opposing the motion, we conclude that party "could not prevail under any circumstances." *Steelvest v. Scansteel Service Center, Inc.*, 807 S.W.2d 476 (Ky. 1991). Where, as here, factual findings are not at issue, we review the legal conclusions of the lower courts *de novo*. *Branham v. Stewart*, 307 S.W.3d 94 (Ky. 2010).

Michael, Jr. and Malik maintain that the trial court ignored a genuine issue of material fact in granting Pete's motion for summary judgment. They claim that Elizabeth's affidavit concerning Pete's legal representation demonstrates that she reasonably believed that Pete was representing not only her own interests, but the interests of her minor children as well. Elizabeth's affidavit states in part as follows:

7. In or around the summer of 2004, Mr. Pete met with me and my children, Michael and Malik, in person at my home to discuss the loss my children suffered as the result of the death of their father, Mr. Anderson.

8. On several occasions during the course of Defendants' representation in the Prior Action, Mr. Pete explained to me that a trust fund would be created for the benefit of my children, including Michael and Malik, should there be recovery of money from Dixie Warehouse Services in connection with the Prior Action.

9. Because of the course of my dealings and communications with Defendants, I understood that Defendants were representing me, my children, and my husband's, Mr. Anderson, estate in the Prior Action.

10. Specifically, I understood that Defendants were representing any claims my children, including Michael and Malik, may have had against Dixie Warehouse Services in the Prior Action.

■■■ Pete argues that the Court of Appeals erred because these facts are irrelevant, given that the question of duty is a legal one for the court to decide. However, "[a] plaintiff in a legal malpractice case has the burden of proving 1) that there was an employment relationship with the defendant/attorney; 2) that the attorney neglected his duty to exercise the ordinary care of a reasonably competent attorney acting in the same or similar circumstances; and (3) that the attorney's negligence was the proximate cause of damage to the client." *Marrs*, 95 S.W.3d at 860 (*quoting Stephens v. Denison*, 64 S.W.3d 297, 298–99 (Ky.App.2001)). The contractual relationship between an attorney and client may be "either expressed or implied by the conduct of the parties." *Daugherty v. Runner*, 581 S.W.2d 12, 16 (Ky.App.1978). Indeed, an attorney-client relationship may be created as a result of a party's "reasonable belief or expectation," based on the attorney's conduct, that the attorney has endeavored to undertake representation. *Lovell v. Winchester*, 941 S.W.2d 466, 468 (Ky.1997); *Am. Continental Ins. Co. v. Weber & Rose, P.S.C.*, 997 S.W.2d 12 (Ky.App.1998). Therefore, whether a party had a "reasonable belief or expectation" relating to the attorney's representation of that party's legal interests is a question of fact. *See Marrs*, 95 S.W.3d 856; *Lovell*, 941 S.W.2d 466.

■■■ In viewing the evidence in the light most favorable to Michael, Jr. and Malik, we may accept the facts presented in their mother's affidavit as true. Elizabeth testified that she believed "that Defendants were representing any claims my children, including Michael and Malik" had against Dixie.[3] Therefore, the reasonableness of Elizabeth's belief presents a genuine issue of material fact, uncontroverted at the time summary judgment was entered. Without record of a contract, memoranda, or other facts establishing the scope of the relationship,[4] it is plausible that Pete's conduct left Elizabeth with the reasonable understanding that he would pursue her minor sons' claims as well as her own. Of course, it may be revealed through discovery on remand that this was not the case, but the factual question of whether Elizabeth held a "reasonable belief or expectation" concerning Pete's representation precludes summary judgment. *Steelvest, Inc.*, 807 S.W.2d at 480. Consequently, we affirm the Court of Appeals' reversal and remand of the trial court's summary judgment ruling on the issue of Pete's representation of Michael, Jr. and

---

**3.** Logically, Elizabeth, as mother of the minor children, would have acted as their "next friend" in pursuing any legal claims the children had. *See Branham*, 307 S.W.3d at 97–98.

**4.** Pete sought and received a protective order from discovery prior to entry of the summary judgment.

Malik regarding any claims they had arising from their father's death.

## II. The Attorneys Owed Duties to the Children Who Were the Real Parties in Interest to the Wrongful Death Action.

Reversing the trial court on a second ground, the Court of Appeals concluded that because Michael, Jr. and Malik were the statutory beneficiaries of the underlying wrongful death suit, they were owed professional duties by Pete, even in the absence of privity. Pete contends that this conclusion is erroneous because the underlying wrongful death action belonged to the Anderson estate, and not to the surviving family members, meaning any malpractice action arising from the wrongful death claim could *only* be brought on behalf of the estate.

 It is well settled that an attorney is liable to those parties who are intended to benefit from his or her services "irrespective of any lack of privity." *Hill v. Willmott*, 561 S.W.2d 331, 334 (Ky.App. 1978); *Seigle v. Jasper*, 867 S.W.2d 476 (Ky.App.1993). As such, the beneficiaries of a given cause of action have standing to bring a malpractice action against an attorney for his or her breach of professional duties in connection with that action. *Hill*, 561 S.W.2d at 334. With this principle in mind, we examine the nature of a wrongful death claim in order to determine who is entitled to the benefit of the action, and, in turn, who has standing to sue the attorney for malpractice.

At common law, no civil cause of action could be maintained for the wrongful death of a person.[5] The 1891 Kentucky Constitution signaled a departure from this long-standing tradition and authorized a civil right to recover when death is negligently caused. Section 241 of the Kentucky Constitution, then and now, provides that:

> Whenever the death of a person shall result from an injury inflicted by negligence or wrongful act, then, in every such case, damages may be recovered for such death, from the corporations and persons so causing the same. Until otherwise provided by law, the action to recover such damages shall in all cases be prosecuted by the personal representative of the deceased person. The General Assembly may provide how the recovery shall go and to whom belong; and until such provision is made, the same shall form part of the personal estate of the deceased person.

The drafters of Kentucky's 1891 Constitution contemplated explicitly naming beneficiaries in the text of Section 241 before concluding that distribution under the provision must be statutorily directed. 4 *Debates of Constitutional Convention of 1890* ("*Debates*") 4715–4720. Convention delegates debated amending the section to preclude recovery when there are no surviving relatives, or to otherwise include language ensuring that recovery would pass to close relatives of the decedent only. 4 *Debates* at 4715–16. One such proposed amendment provided that "there shall be no recovery unless there is a wife or child, father or mother, brother or sister of the deceased," while another inserted the language "heirs-in-law" into the provision. 4 *Debates* at 4715. Ultimately, the delegates concluded that amending the text of the section to name the beneficiaries would invade the province of the Gen-

---

5. "The maxim, "*[a]ctio personalis moritur cum persona,*" was the uniform rule of the common law, and prevails in Kentucky to-day [sic], except where it has been modified by the express language of the Constitution and statute." *Gregory v. Illinois Cent. R. Co.,* 80 S.W. 795 (Ky.1904).

eral Assembly, and invite challenges to the provision. *4 Debates* at 4717.

Notably, Great Britain's Lord Campbell's Act, passed by Parliament in 1846, provided an early model wrongful death statute for American legislators to follow in the middle and late 1800s. The Act authorized a cause of action when death is "caused by wrongful act, neglect, or default," and provided that it "shall be for the benefit of the wife, husband, parent, and child of the person whose death shall have been so caused," and was to be brought "by and in the name of the executor or administrator of the person deceased." Lord Campbell's Act (Fatal Accidents Act), 1846, 9 & 10 Vict., ch. 93, §§ 1–2 (Eng.).

Following the passage of Lord Campbell's Act, many states began enacting wrongful death statutes.[6] Kentucky enacted two wrongful death statutes *prior* to the adoption of the 1891 Constitution. The first statute created a cause of action for families of individuals killed in duels, restricting recovery to the widow and any minor children of the deceased. 1851 Ky. Rev.Stat., ch. 31, § 1. A second, more general wrongful death statute allowed recovery for death arising from "the neglect or misconduct of railroad companies and others." 1854 Ky.Rev.Stat., ch. 964. Action under this version of the statute was vested in the "widow, heir or personal representative of the deceased." *Id; see also Jordan's Adm'r v. Cincinnati, N.O. & T.P. Ry. Co.*, 89 Ky. 40, 11 S.W. 1013 (Ky.1889). The statute was later amended following the adoption of Section 241 of the Kentucky Constitution. *See* Chapter 1, § 6 of the Kentucky Statutes of 1903. Ultimately, the wrongful death statute was com-

piled as KRS 411.130, which, in its present form, states:

(1) Whenever the death of a person results from an injury inflicted by the negligence or wrongful act of another, damages may be recovered for the death from the person who caused it, or whose agent or servant caused it. If the act was willful or the negligence gross, punitive damages may be recovered. The action shall be prosecuted by the personal representative of the deceased.

(2) The amount recovered, less funeral expenses and the cost of administration and costs of recovery including attorney fees, not included in the recovery from the defendant, shall be for the benefit of and go to the kindred of the deceased in the following order:

(a) If the deceased leaves a widow or husband, and no children or their descendants, then the whole to the widow or husband.

(b) If the deceased leaves a widow and children or a husband and children, then one-half (1/2) to the widow or husband and the other one-half (1/2) to the children of the deceased.

(c) If the deceased leaves a child or children, but no widow or husband, then the whole to the child or children.

(d) If the deceased leaves no widow, husband or child, then the recovery shall pass to the mother and father of the deceased, one (1) moiety each, if both are living; if the mother is dead and the father is living, the whole thereof shall pass to the father; and if the father is dead and the mother living, the whole thereof shall go to the mother. In the event the deceased was an adopted person, "moth-

---

6. *See also* John Fabian Witt, *The Long History of State Constitutions and American Tort Law,* 36 Rutgers L.J. 1159 (2005).

er" and "father" shall mean the adoptive parents of the deceased.

(e) If the deceased leaves no widow, husband or child, and if both father and mother are dead, then the whole of the recovery shall become a part of the personal estate of the deceased, and after the payment of his debts the remainder, if any, shall pass to his kindred more remote than those above named, according to the law of descent and distribution.

In analyzing KRS 411.130, we are mindful of the "basic rule in statutory interpretation" that "the 'plain meaning' of the statute controls." *Commonwealth v. McBride*, 281 S.W.3d 799, 803 (Ky.2009). Under the plain language of the statute, the cause of action "belongs" to the beneficiaries of the wrongful death claim, as the amount recovered in a wrongful death action "shall be for the benefit of and go to the kindred of the deceased[.]" KRS 411.130(2). The statute requires one-half of the proceeds from the wrongful death action to be distributed to the surviving spouse, with the other one-half passing to the children of the decedent. KRS 411.130(2)(a)-(b). Only when the deceased leaves no surviving spouse, no children, and no parents will the recovery pass directly to the estate, where the debts of the estate are to be paid before the remainder is distributed to the deceased's "kindred more remote" than those named. KRS 411.130(2)(e).

The personal representative is vested with the responsibility of bringing the action, but the representative is not a statutory beneficiary entitled to recovery. *See Vaughn's Administrator v. Louisville N.R. Co.*, 297 Ky. 309, 179 S.W.2d 441 (1944). The language of the early wrongful death statutes in Kentucky invited confusion regarding which party—the widow, heir, or estate—was entitled to institute a cause of action for wrongful death. *See Henderson's Adm'r v. Kentucky C.R. Co.*, 86 Ky. 389, 5 S.W. 875 (1887). As a result of this confusion, the drafters of Section 241 explicitly identified the personal representative as the party who must prosecute the claim. *See 4 Debates* at 4717. Aligning with that constitutional mandate, KRS 411.130(1) directs that the estate's representative prosecute the claim. In the context of the statute as a whole, "prosecute" necessarily means "to commence and carry out a legal action." BLACK'S LAW DICTIONARY 1341 (9th ed.2009). The statute does not accord any benefit of the recovery to the personal representative. With no interest in the recovery, the personal representative is a "nominal" party, as the "real parties in interest are the beneficiaries whom [the personal representative] represents." *Vaughn's Administrator*, 179 S.W.2d at 445.

Furthermore, the right to *bring* an action is not always tantamount to the right to *benefit* from that action, as illustrated in this Court's recent decision in *Branham*, 307 S.W.3d 94. In *Branham*, the wife of a man who was injured in a car accident when he was a minor brought suit against the attorney who settled the litigation stemming from the accident. *Id.* at 96. The wife, who was appointed guardian of her husband after he was declared incompetent, alleged that an attorney-client relationship had existed between the attorney and her husband by virtue of the attorney's representation of her husband's next friend, his mother. *Id.* We held that the attorney who pursues claims on behalf of a minor's next friend owes professional duties to the minor, rejecting the position that the minor's guardian or next friend is the attorney's only client. 307 S.W.3d at 98. *Branham* was based in part on our conclusion that since a "guardian's authority to settle litigation is intended to be on

behalf of the ward," and is not intended to further the guardian's own interests, in turn, "any legal action by the guardian must be to help the ward, not necessarily the guardian." *Id.* To hold that an attorney only represents the guardian's interest, we opined, would be to ignore the minor's "direct interest" in the underlying action. *Id.* at 99 (internal citations omitted). Similarly, construing the language of KRS 411.130 which requires the personal representative to bring a wrongful death action as elevating that representative to the rank of statutory beneficiary would require this Court to disregard the plain language of KRS 411.130(2) specifically identifying those individuals to whom the action belongs. *See County of Harlan v. Appalachian Regional Healthcare, Inc.*, 85 S.W.3d 607, 611 (Ky.2002) ("General principles of statutory construction hold that a court must not be guided by a single sentence of a statute but must look to the provisions of the whole statute and its object and policy.").

As for the Kentucky and federal authorities cited by Pete, *Wheeler v. Hartford Accident and Indemnity Co.*, 560 S.W.2d 816 (Ky.1978); *Tennimon v. Bell Helicopter Textron Inc.*, 823 F.2d 68 (5th Cir. 1987); *Spangler's Administrator v. City of Middlesboro*, 301 Ky. 237, 191 S.W.2d 414 (1945), these cases uniformly declare that the personal representative is the only party that may *maintain* the wrongful death cause of action on behalf of the estate. This contention is uncontested as

the plain language of the statute supports it.[7]

Finally, this Court's recent decision in *Ping v. Beverly Enterprises, Inc.*, 376 S.W.3d 581 (Ky.2012) puts to rest any dispute as to whether the statutory beneficiaries are the real parties in interest to a wrongful death action. In *Ping*, the administrator of the estate of a woman who had been a long-term care facility resident brought suit against the operators of the facility alleging negligence resulting in injuries causing the woman's death. 376 S.W.3d at 586. Our opinion, which resolved the question of whether a decedent can bind his or her beneficiaries to arbitrate a wrongful death claim, examined the distinction between the wrongful death statute and the survival statute, KRS 411.140.[8] 376 S.W.3d at 598. We concluded that while a survival action is derivative of a personal injury claim which belongs to the estate, a wrongful death action is an independent claim belonging to the intended beneficiaries under KRS 411.130, a claim that "accrues separately to the wrongful death beneficiaries and is meant to compensate them for their own pecuniary loss." *Id.* at 598–99. Based on the plain language of KRS 411.130 and our holding in *Ping*, we must reject Pete's contention that the wrongful death action belongs to the estate.

■ Accordingly, we find that Michael, Jr. and Malik were real parties in interest

---

7. Interestingly, *Wheeler v. Hartford Accident and Indemnity Co.* provides that "[c]ontrary to the requirements of KRS 411.130, when a personal representative refuses to bring an action, the beneficiary may do so in her own name." 560 S.W.2d at 819 *citing Harris v. Rex Coal Company*, 177 Ky. 630, 197 S.W. 1075 (1917).

8. KRS 411.140, the so-called "survival statute," provides: "No right of action for personal injury or for injury to real or personal

property shall cease or die with the person injuring or injured, except actions for slander, libel, criminal conversation, and so much of the action for malicious prosecution as is intended to recover for the personal injury. For any other injury an action may be brought or revived by the personal representative, or against the personal representative, heir or devisee, in the same manner as causes of action founded on contract."

with regard to the wrongful death claim. *See Vaughn's Administrator*, 179 S.W.2d at 445. As the intended beneficiaries of the claim, they were entitled to one-half of the proceeds of any recovery and thus, Pete's actions in litigating the claim must be construed as having been undertaken for Michael, Jr. and Malik's benefit.[9] Michael, Jr. and Malik had standing to bring the malpractice claim, and the one-year statute of limitations period applicable to a professional negligence claim was tolled until they reached the age of majority.

### III. The Professional Malpractice Complaint Did Not Waive Any Loss of Consortium Claim.

 Finally, Pete claims that Michael, Jr. and Malik waived any claim arising out of his alleged failure to assert a loss of parental consortium claim on their behalf. He argues that Michael, Jr. and Malik "failed to make any allegations whatsoever in the Complaint filed against [Pete and the other attorneys] related to any personal claims they purportedly had against Dixie Warehouse, such as for loss of consortium." In response, Michael, Jr. and Malik correctly note that Kentucky is a notice pleading jurisdiction, where the "central purpose of pleadings remains notice of claims and defenses." *Hoke v. Cullinan*, 914 S.W.2d 335, 339 (Ky.1995) (*citing Lee v. Stamper*, 300 S.W.2d 251 (Ky.1957)). The complaint pleaded generally that Pete owed the Plaintiffs a professional duty of care in connection with what they deemed

the "Prior Action." While the complaint specifically referenced Michael, Jr. and Malik's standing as statutory beneficiaries of the wrongful death action it also contained a more general statement that Pete owed "the Plaintiffs the duty to protect their interests with the reasonable care, skill, legality and diligence possessed and exercised by a Kentucky attorney and/or Kentucky law firm practicing in similar circumstances." This general allegation was sufficient notice of professional negligence claims generally, not simply those arising from the statutory wrongful death claim.[10]

### CONCLUSION

For reasons stated herein, we affirm the Court of Appeals' Opinion reversing and remanding the summary judgment granted by the trial court in Pete's favor. This matter is remanded to Jefferson Circuit Court for further proceedings consistent with this Opinion.

MINTON, C.J.; KELLER, and VENTERS, JJ., concur. NOBLE, J., concurs in part and dissents in part by separate opinion. SCOTT, J., concurs in part and dissents in part by separate opinion in which CUNNINGHAM, J., joins.

NOBLE, J., Concurring in Part and Dissenting in Part:

I do not disagree with the majority position that when an attorney undertakes

---

9. Given their position as statutory beneficiaries, they need not rely on third-party beneficiary status to establish that Pete owed them professional duties. *See Seigle v. Jasper*, 867 S.W.2d at 476, (holding that an attorney may be liable to third parties).

10. Discovery was stayed, on Pete's motion, four months after the complaint was filed. The summary judgment motion was filed two months later and, in fact, no discovery was

ever conducted regarding the nature of Pete's attorney-client relationship with the minor Anderson children. In their response to the summary judgment motion, the Andersons made clear their intent to litigate all claims they had against Pete including failure to "assert, on behalf of Michael and Malik, a cause of action for the loss of services of their father."

representation in a wrongful death action, he has a fiduciary duty to the statutory beneficiaries of the decedent, even though he has been retained and is directed by the personal representative of the estate. This is so because, though not named as parties, the beneficiaries of the estate are the real parties in interest and will take if there is any recovery. The damages they will recover from the wrongful death action are economic damages only. *See Birkenshaw v. Union Light, Heat and Power Co.*, 889 S.W.2d 804, 806 (Ky.1994) ("[T]he measure of damages for a wrongful death under the Kentucky Wrongful Death Statute is the value of the destruction of the power of the decedent to earn money." (quotation mark omitted)). When the beneficiaries are minors, it naturally follows that the statute of limitations does not begin to run on a malpractice claim until they reach their majority. In this malpractice case, if the beneficiaries, here the Appellees, prevail, I believe the only damages they can recover are for economic loss from the wrongful death claim, contrary to the majority holding.

It is often also the case that the surviving spouse will bring a loss of spousal consortium claim in the same action. And, the surviving spouse most often acts as next friend to bring a claim for loss of parental consortium on behalf of any minor beneficiaries, usually the surviving spouse's children, in the same action. *Giuliani v. Guiler*, 951 S.W.2d 318 (Ky.1997). Loss of consortium claims are for damages for the loss of love, affection and companionship, and in the case of a spouse, sexual congress. *Martin v. Ohio County Hosp. Corp.*, 295 S.W.3d 104, 107 (Ky.2009). Such damages differ from the economic damages in a statutory wrongful-death claim. *Id.*

Since *Guiler* and *Martin*, we have recognized that loss of consortium claims belong specifically to the person claiming the loss, not the estate, and certainly not to the statutory beneficiaries under the wrongful death statute. *Id.* at 108. And such claims can be brought independently of a wrongful death claim, but most often are not, as there must be some determination that the death was wrongfully caused in both types of actions as they "derive from the same injury." *Dep't of Educ. v. Blevins*, 707 S.W.2d 782, 785 (Ky.1986).

Here, the attorney, Mickiel Pete, brought the wrongful death action seeking loss of earning power on behalf of the estate, and brought a loss of spousal consortium claim on behalf of the surviving spouse, who was also the personal representative of the estate, seeking compensation for her loss of love, affection, companionship and sexual congress. He did not bring a claim on behalf of the children, through a next friend, for their loss of parental consortium.

I write separately because I believe the fiduciary duty to the statutory beneficiaries described by the majority arises only from the wrongful death claim and not from the loss of consortium claims. This is significant because only economic loss damages arise from a wrongful death claim. Under the facts of this case, the children have only a malpractice claim against Pete that they can bring within one year of reaching majority on the wrongful death action. However, this is not to say that there is not also a fiduciary duty that goes to minors who could also have brought loss of consortium claims, seeking non-economic damages for love, affection and companionship of their deceased parent. But I don't believe that claim has been properly made here, and thus loss of consortium damages are not available in this remanded malpractice action.

The facts of this case indicate that while Pete did obtain two experts to testify as to causation of the death, the experts did not pass *Daubert* scrutiny. Because there was therefore no evidence of causation, the trial court dismissed the case against the defendant. The personal representative of the estate attempted to appeal, but was unsuccessful in appealing that ruling. But over two years later, after one of the two minor beneficiaries obtained majority, he filed a malpractice claim against Pete, joined by his mother as next friend for the remaining minor beneficiary. The malpractice claim was for negligence, gross negligence, breach of fiduciary duty, and for negligent or fraudulent misrepresentation, apparently related to only the wrongful death claim.

On remand, the trial court should look only at how Pete handled the wrongful death claim, which has as its damages only monetary loss from the decedent. The "soft" damages of loss of love and affection, companionship and, for the spouse, sexual congress are not a part of a wrongful death claim under Kentucky law. Should the beneficiaries be able to show that Pete somehow committed malpractice by failing to obtain experts that could get past *Daubert* scrutiny, and that this caused the dismissal, they can only claim loss of earning power, medicals, and funeral expenses under a wrongful death claim.

Because claims for wrongful death and loss of consortium are most often brought in the same action, there are grounds for confusion. In order to recover for the damages that follow from a loss of consortium claim, the pleadings must also allege a malpractice claim for loss of parental consortium as well as for a wrongful death claim. All three claims—wrongful death, loss of spousal consortium, and loss of parental consortium—depend on proving that the death was negligently caused.

One bad act can give rise to three separate claims of malpractice: loss due to malpracticing the wrongful death claim, the spousal consortium claim, and the parental consortium claim. The loss of consortium claims require not only proof of the negligent cause of death, but also proof individual to each claimant in order to establish consortium damages. The wrongful death claim damages require only proof of negligent conduct causing the decedent's death and the economic loss of the decedent.

Pete obviously did tell Mrs. Anderson about the loss of spousal consortium claim, because she brought that claim, though it was dismissed in the trial court as untimely. And, she cannot now make a malpractice claim for her loss of consortium damages because the statute of limitations on a malpractice claim has expired for her.

But Pete did not file a claim for the children's loss of parental consortium. The fact that this claim was not brought is not, standing alone, fatal to the children's claim of loss of consortium damages in a subsequent malpractice action. The children have individual claims that are not subject to the statutory time frame for bringing a wrongful death action due to their minority, nor to the statutory distribution of the economic loss damages. Whatever can be shown about an individual's loss of consortium with the decedent is unique to him. That claim can be brought by a next friend in his minority, or he may bring it himself after he reaches majority. Here, however, the children cannot bring this claim directly, since the wrongful death case was decided against them on summary judgment, and thus the preliminary fact—that their father's death was negligently caused—cannot be proven in a direct action because the summary judgment denying liability is res judicata. Consequently, their only means of reach-

ing their loss of consortium damages now is through the malpractice action.

Thus if loss of consortium damages had been pleaded in the malpractice complaint, the children could seek those non-monetary damages if the malpractice claim established that Pete's action prevented a finding that their father's death was negligently caused. The mere fact that Pete did not make their loss of consortium claim at the time is merely further proof in the malpractice claim.

In order to recover loss of consortium damages in the malpractice claim, the children of necessity must show that there would have been a finding of wrongful death (though Pete's negligence prevented that finding), and that they sustained loss of love, affection and companionship with their father because of it. But these damages are not due to their statutory beneficiary status in a wrongful death action that must be brought within the statutory time period by a personal representative of the estate under the wrongful death statute.

Thus, the children could have made malpractice claims against Pete for their damages as statutory beneficiaries and for their damages due to loss of consortium. The jury would first determine whether Pete malpracticed the wrongful death case. If so, the jury would then calculate economic loss. Then, the jury would determine whether the children sustained compensable loss of consortium, and if so, in what amount.

This scenario is conceptually somewhat difficult, because it appears that we are simply describing two different kinds of damages stemming from a single breach of duty. But because not every statutory beneficiary can make a loss of consortium claim, our law has recognized that wrongful death and loss of consortium are separate claims. Each claim requires different proof in addition to the common element of

a death caused by another's negligence. That is fact one. But from there, the elements of the claims depart. In wrongful death, there must be proof of economic loss, and that the claimant is a statutory beneficiary entitled to the statutory distribution. In loss of consortium, the claimant must prove the status of spouse or child, and the facts of his individual relationship with the decedent in order to prove the extent of the loss of love, affection, and companionship, or sexual congress in the case of a spouse. To recover both types of damages, both must be properly pleaded and proved.

I write separately because I do not believe the Appellees have made a claim for their loss of consortium damages under the pleadings in this case, and I want to point out that the only damages that should be recoverable by them on remand, should they prevail, are for economic loss. I believe this type of case, which involves allegations of malpractice on more than one claim, requires more than the barest of notice pleading. And certainly it requires more than referencing *only* the wrongful death claim.

Since there are two possible claims of malpractice here, with one of them not having been pleaded below, I cannot say that general allegations of negligence give any notice at all that the children are seeking loss of consortium damages. In fact, paragraph 12 of the Complaint, a part of which the majority cites, speaks *only* to representation of the children as statutory beneficiaries, and reads in its entirety,

12. In connection with their provision of legal services to Plaintiffs as above described, Defendants owed certain legal duties and responsibilities not only to Mrs. Anderson in her capacity as the personal representative of the Estate of Mr. Anderson, but to Michael and Malik as well *by virtue of their standing as*

*statutory beneficiaries* of a portion of any sums that would have been received via the Prior Action. Defendants owed Plaintiffs the duty to protect their interests with the reasonable care, skill, legality and diligence possessed and exercised by a Kentucky attorney and/or Kentucky law firm practicing in similar circumstances.

(Emphasis added.)

Clearly, the last sentence relates to the preceding sentence, and cannot be construed as a separate, broad claim sweeping in the loss of parental consortium claim. Nowhere in the complaint is loss of consortium mentioned in regard to the children, while the wrongful death claim is repeatedly referenced and the background facts refer only to the wrongful death claim. Finally, the demand part of the claim asks only for "damages," and does not indicate that non-financial damages are being requested.

It is unreasonable to expect a defendant to extrapolate that a claim for loss of parental consortium damages is being made when it is never mentioned in the complaint. That is particularly true here since the specific damages that follow each claim are distinctly different. Otherwise, this Court is essentially saying that it is adequate pleading to simply say, "You were negligent in Act A and I want damages for A *and B.*" This clearly does not rise to the level of adequate notice required by our admittedly broad notice pleading. There is simply no notice that the children are also looking for damages from their loss of parental consortium claim.

Also, I recognize that this decision today places wrongful death attorneys in the difficult position of having to potentially face a malpractice claim many years in the future after young children have gained their majority. The statute requires that a wrongful death action be brought by the personal representative of the estate on behalf of the beneficiaries of the estate. That makes the personal representative the agent of the minor beneficiaries. The only viable argument that the minor children cannot be bound by the acts of their agent is that as minors, they retain their right to file a tort action within one year of reaching their majority without being time barred.

It seems a much simpler solution to simply say that in this case the personal representative also has the duty to bring any ancillary claims on behalf of the children in a timely manner, and failure to do so can result in an action being time-barred. Perhaps the legislature could do so. The personal representative is usually a parent of the minor beneficiaries, or someone who is motivated to look out for their interests, and thus is likely to be very diligent, as no doubt Mrs. Anderson would have been here had she been informed that she could bring an action for the children's loss of parental consortium. Certainly, she attempted to bring the malpractice action and subsequently brought this malpractice action on behalf of her remaining minor son.

But the majority has decided that the risk is better born by the attorney in a wrongful death action, who is held to professional standards and knowledge, than by the personal representative who often is not informed about the matter. I cannot fault the logic of that distribution of risk, although I do regret the potentially chilling effect this has on wrongful death representation.

SCOTT, J., Concurring in Part and Dissenting in Part:

Although I fully concur with the majority on Section I (the children's potential direct claim), I respectfully disagree with,

and dissent from, the remainder of the opinion. I do so because the true test of a new common law rule should be how efficiently it works in a real-world system of justice, not how theoretically attractive it may sound. I dissent because this new holding plainly fails in this regard and will be a "disruptive bear" to apply efficiently in our practice of law. Plainly, "bad facts [do] make bad law." *Haig v. Agee*, 453 U.S. 280, 319, 101 S.Ct. 2766, 69 L.Ed.2d 640 (1981) (Brennan, J., dissenting).

As I said in this opinion's predecessor, the "opening of this 'door' will invite greater extensions." *Branham v. Stewart*, 307 S.W.3d 94, 104 (Ky.2010) (Scott, J., dissenting). This, then, is the first one. Henceforth an attorney hired by a personal representative to represent an estate on its claims must not only satisfy the personal representative, but also all the estate's beneficiaries, including minors, such as the representative's children here. Either that, or wait the years it takes for minors to reach majority to see what they do about decisions that had to be made many years before; quite proverbially, the conflict is recognized by the biblical quote, "[n]o man can serve two masters...." *Matthew* 6:24 (King James).

Plainly, then: who is the trial attorney to look to in determining whether the suit may, or should, be settled or for how much—the mother/personal representative or the underage children? Clearly, court approval of such settlements now provides an attorney no comfort or release. *Cf. Branham*, 307 S.W.3d at 95 ("Backus settled all [three] tort claims [in the circuit court] for $1.3 million."); *see also* KRS 387.280. And how much of the settlement will be allocated to each? Is there any one person left now to whom the attorney can turn and ask "what do you want me to do?"

With these new rules of representation, the answer is simply no. In this new age of theoretical litigation, an attorney must make an exceptionally risky choice of who to listen to and I cannot imagine a more inefficient means of arriving at litigation-ending decisions. As fair and nice a theory as the majority's position seems at first blush, it simply doesn't contribute to an efficient system of litigation; not to mention the conflicts it now raises with one counsel having duties to potentially antagonistic multiple parties. We just shouldn't be leaving one hundred years or more of good, workable precedent.

Thus, as in *Branham*, I must dissent.

CUNNINGHAM, J., joins.