RENDERED: APRIL 18, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0681-MR

YARA SANGABRIEL AND THE                                      APPELLANTS
ESTATE OF ARTURO SALGADO, JR.

v.                    APPEAL FROM LAUREL CIRCUIT COURT
                      HONORABLE GREGORY A. LAY, JUDGE
                      ACTION NO. 21-CI-00324

MICHAEL WILKENING                                              APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: THOMPSON, CHIEF JUDGE; COMBS AND LAMBERT, JUDGES.

COMBS, JUDGE: This case arises from litigation surrounding a fatal traffic

accident and subsequent negotiations involving insurance coverage.

Yara Sangabriel and the Estate of Arturo Salgado, Jr., appeal an order

of the Laurel Circuit Court granting Michael Wilkening's motion for summary

judgment in his petition for declaratory judgment. Sangabriel contends that the

court erred by concluding that the parties' settlement agreement, which was brokered in a "limits tender" mediation, settled all claims in exchange for an agreed distribution of all proceeds among all claimants. After our review, we affirm.

The facts underlying this case are tragic. Shortly before three a.m. on August 3, 2020, Salgado, an unlicensed 17-year-old, was operating a motor vehicle on eastbound I-64 just outside Mt. Sterling in Montgomery County. Salgado had limited driving experience, having only driven an automobile during a vacation in Mexico. He lost control of the vehicle. It struck a rock embankment and rolled over and over on the interstate highway. Finally, it came to rest in the center of the driving lanes. No lights on the vehicle remained illuminated. Good Samaritans following Salgado pulled their vehicles to the right shoulder of the driving lanes and activated hazard lights. They exited their automobiles.

Meanwhile, Michael Wilkening was driving his vehicle along this route when he saw the illuminated vehicles parked on the shoulder. As he moved to the left lane of travel to accommodate the vehicles on the shoulder, Wilkening abruptly encountered the upturned vehicle lying across the highway. He veered into the median and collided with Salgado and four others who were positioned there. Shana Dawn Cunningham-Terrill was killed; three other individuals (Jeffery Perry, Kayla LeMaster, and Christy Hampton) were injured. Several days later,

Salgado died as a result of the collision. Salgado's mother, Yara Sangabriel, was appointed administrator of his estate.

At the time of the accident, Wilkening and his wife had automobile liability insurance with Farmers New Century Insurance Company (New Century). The policy had a bodily injury liability limit of $100,000 per person/$300,000 per accident. New Century retained counsel to defend Wilkening. Sangabriel, individually and as administrator of Salgado's estate (the Estate), hired counsel to represent both her individual interests and the interests of the Estate.

Because of the sudden emergency with which he was confronted, Wilkening's liability was unclear. However, by November 9, 2020, New Century had offered to tender a single per-person limit of $100,000 to the Estate of Cunningham-Terrill representing settlement of the wrongful death claim and the loss of consortium claims asserted by her surviving spouse and young child. This offer left an aggregate limit of $200,000 to satisfy the remaining claims.

In light of the grave consequences of the accident, New Century concluded that Wilkening's coverage limits were insufficient to fully satisfy the outstanding claims. In order to protect its insured, New Century offered to tender the remaining limits of Wilkening's policy to the other claimants in exchange for full releases of all claims from all claimants. In correspondence to claimants' counsel, Wilkening's counsel observed that the parties were faced with a new

option. They could either spend considerable time debating the comparative fault affecting the value of the claim of Salgado's estate and pouring over each claimant's medical records or they could agree among themselves to a fair division of the limited proceeds. The claimants agreed to participate in mediation with Brian House of Brian C. House Mediations, LLC, to resolve a single issue -- how to divide the remaining $200,000 in settlement of their claims.

Before mediation, Wilkening's counsel reiterated that New Century offered the remaining aggregate limits of $200,000 to the claimants only in exchange for a global settlement of all remaining claims. To assess whether an equal division of the proceeds might be the most equitable settlement option, the claimants agreed to exchange documentation in support of the perceived value of their respective claims. Counsel for Sangabriel and the Estate presented a summary of damages sustained by the Estate. While Kentucky recognizes a loss of consortium claim for the loss of a child's affection and companionship, Sangabriel acknowledged that her claim for loss of consortium would be difficult to value -- especially since the value of the claim could be determined only in the context of the remaining months of Salgado's minority. Nevertheless, counsel **specifically noted** that Sangabriel's claim for loss of consortium would be presented for resolution during the upcoming mediation.

Sangabriel participated in the mediation conference that was conducted on February 18, 2021, by Zoom. The parties agree that all claims, *including* Sangabriel's consortium claim, were presented for resolution. Despite the genuine issue of Salgado's comparative fault and his proximity to the age of majority, Sangabriel negotiated a greater portion of the pool of $200,000 than the other three remaining claimants -- $71,000. Progressive Casualty Insurance Company, representing Salgado, its insured, agreed to pay out its $100,000 limit in equal portions to settle the claims of Hampton, Cunningham-Terrill, LeMaster, and Perry.

Immediately following the mediation conference, House drafted an informal agreement to memorialize the understanding of the claimants regarding the negotiated settlement. It provided that the claimants would execute formal releases of their claims in exchange for the portion of the insurance proceeds designated in the agreement. Counsel could make revisions as deemed necessary. The agreement did not specify details of the negotiated claims, including the claim for loss of consortium derived from the claim for wrongful death of Salgado's estate. After their review, counsel for each party executed the settlement agreement on February 18, 2021. With her permission, Sangabriel's counsel executed the agreement on Sangabriel's behalf "as administrator of the Estate."

Settlement checks and releases were tendered to the claimants. All claimants executed releases except Sangabriel, individually and as administrator of the Estate. When Wilkening's counsel inquired about the status of the release, Sangabriel's counsel explained in an email that he was "hoping to have the underinsured out of way [*sic*] and execute them at the same time." He indicated that if he did not hear anything soon concerning settlement with the underinsured coverage provider, "I will have Ms. Sangabriel come in and execute the release and we'll deposit the check." When he eventually corresponded again, counsel for Sangabriel indicated that Salgado did not agree to release the loss of consortium claim during the mediation conference. Therefore, she declined to execute the tendered release.

On April 30, 2021, Wilkening filed an action for declaratory judgment in Laurel Circuit Court. He asked the court to enforce the settlement reached at mediation by ordering Sangabriel and the Estate to accept the sum of $71,000.00 as compensation for their claims. After a period of discovery and briefing, each party filed a motion for summary judgment. The trial court entered an order in favor of Wilkening on May 7, 2024.

The trial court concluded that the terms of the Settlement Agreement were ambiguous. Given the nature of the mediation, the court reasoned that the agreement was silent on a vital matter: the claims for the loss of consortium.

"There were three consortium claims presented at the mediation, and the actual words of the Settlement Agreement are entirely silent as to the outcome of those three claims." The trial court observed, in part, as follows:

> Importantly to the phrasing of mediator Brian House's "Settlement Agreement" which he drafted at the end of the mediation, upon which [Sangabriel and the Estate] rely as the basis for their claims herein, counsel in correspondence with Brian House and each other prior to mediation used shorthand "Estate of Arturo Salgado" in reference to the wrongful death and loss of consortium claims arising from the death of Arturo Salgado. Likewise, the claims associated with Estate of Shana Cunningham-Terrill simply were referenced as "Estate of Shana Cunningham-Terrill" despite Mrs. Terrill's surviving husband and minor child both having related loss of consortium claims. Even the mediator's mediation confirmation letter setting the mediation referred simply to the Estate of Salgado and the Estate of Terrill with no explicit reference to the associated loss of consortium claims despite the same being included in the mediation.

> Mediator House's contemporaneous mediation "notes" from this "Limits Tender" mediation show the loss of consortium claim of Ms. Sangabriel was negotiated at mediation and included in the "Salgado" column of Mr. House's negotiations grid. . . .

> According to the testimony of the mediator, at <u>no</u> time was the mediator told the loss of consortium claim of Ms. Sangabriel was <u>not</u> being settled. Mr. House testified that he would have made a notation on his mediation notes if he had been instructed to withdraw the loss of consortium claim from the "Limits Tender" mediation's negotiations. Counsel for [Wilkening] was never informed by the mediator that any claims were being reserved or being removed from negotiations at the

-7-

mediation. It should be noted that the parties herein agreed to the deposition of the mediator. Further, Brian House consented to the taking of his deposition.

. . . .

Yara Sangabriel's individual/loss of consortium claim was not reserved in Mr. House's written Settlement Agreement. No claims were reserved in the Settlement Agreement. The Settlement Agreement from this Limits Tender mediation is entirely silent in its express written words as to the three (3) loss of consortium claims at issue in the mediation. . . .

Despite this being a special type of circumstance/ mediation -- a Limits Tender mediation -- Counsel for Ms. Sangabriel did not include in the mediator's Settlement Agreement that any claim was not being settled or that any claim was being reserved. No claim was expressly reserved in the Settlement Agreement despite knowing the parameters going into this Limits Tender mediation and also knowing that all available monies were being expended as a result of this mediation.

All counsel executed the mediator's Settlement Agreement. Yara Sangabriel, individually and as Administratrix for the Estate of Salgado, was represented by the same attorney. Mr. House's Settlement Agreement only expressly refers to the two (2) "Estates" but does not define the Estates or limit the term "Estate" to mean only the wrongful death claims of Estate and not the loss of consortium claims associated with the Estates.

Mediator House testified that if the mediation had not settled the claim of Yara Sangabriel, then he would have specifically written that into his Settlement Agreement. When asked expressly by [Sangabriel's] counsel about the meaning of the "Settlement Agreement" drafted by him at the conclusion of the

-8-

successful Limits Tender mediation, Brian House testified expressly as follows:

> Q. Do you believe that this agreement settled loss consortium [*sic*] claim of Yara Sangabriel?
>
> A. It is my belief that it did based upon the notes that I had, Matt.

Mr. House's Settlement Agreement uses the same abridged reference to the Estate of Salgado as he and the counsel had used in the pre-mediation communications. Mr. House explained the reference to "Estate of Arturo Salgado" in his Settlement Agreement meant it included the loss of consortium claim of Yara Sangabriel.

Likewise, the mediator's Settlement Agreement at issue makes no reference to either loss of consortium [claim] associated with the Estate of Cunningham-Terrill. As with the Estate of Salgado, the Settlement Agreement just references the "Estate of Cunningham-Terrill."

The trial court concluded that Wilkening's motion for summary judgment should be granted, and Sangabriel was ordered to sign the release tendered by New Century. This appeal followed.

On appeal, Sangabriel argues that the trial court erred by considering the nature of the mediation, the intention of the parties, and the understanding of the other claimants when it interpreted the parties' settlement agreement to include resolution of her loss of consortium claim. She maintains that the writing executed following mediation constituted the complete and unambiguous agreement of the parties and that, therefore, reference to the parol evidence should have been

forbidden. However, she argues in the alternative that parol evidence creates a genuine issue of material fact precluding summary judgment. We disagree.

An agreement to settle legal claims is a contract. *Cantrell Supply, Inc. v. Liberty Mutual Insurance Co.*, 94 S.W.3d 381, 384 (Ky. App. 2002). A meeting of the minds or mutual assent to the essential terms of a settlement is necessary for the formation of an enforceable agreement. 15B AM. JUR. 2D *Compromise and Settlement* § 7. In this appeal, the parties do not contend that they failed to assent mutually to the consideration exchanged. Instead, they agree that they reached a meeting of the minds on all material terms and that the terms of the agreement as they understood them are enforceable against them.

A settlement agreement is subject to the rules of contract interpretation. *Cantrell Supply, Inc.*, 94 S.W.3d at 384. "Any contract or agreement must be construed as a whole, giving effect to all parts and every word in it if possible." *City of Louisa v. Newland*, 705 S.W.2d 916, 919 (Ky. 1986). The primary objective is to effectuate the intentions of the parties. *Cantrell Supply, Inc.*, 94 S.W.3d at 384.

Where an agreement is unambiguous, the parties' intentions must be discerned from the four corners of the instrument without resort to extrinsic evidence. *Hoheimer v. Hoheimer*, 30 S.W.3d 176 (Ky. 2000). Parol evidence may not be admitted to contradict or vary the terms of the written contract. *Reynolds*

*Metals Co. v. Barker*, 256 S.W.2d 17, 19 (Ky. 1953). A contract is not rendered ambiguous simply because the parties do not agree on its proper construction or their intent upon executing the contract. *Overberg v. Lusby*, 727 F. Supp. 1091, 1093 (E.D. Ky. 1990). However, where the meaning of the contract is not clear or is silent respecting a matter material to the rights of the contracting parties, the court may consider the intention of the parties as evidenced by the circumstances surrounding the making of the contract. *Reynolds Metals Co.*, 256 S.W.2d at 19. The interpretation of a contract -- including determining whether a contract is ambiguous -- is a question of law for the courts and is subject to *de novo* review. *Id.* Thus, we do not defer to the trial court's interpretation of the terms of the settlement agreement. *Spot-A-Pot, Inc. v. State Resources Corp.*, 278 S.W.3d 158, 161 (Ky. App. 2009).

With respect to the settlement agreement at issue in this appeal, the trial court did not err by concluding that its terms are ambiguous. There is no dispute among the parties that the entirety of the available insurance proceeds would be distributed. Five claimants asserted claims based upon personal injury or death; three asserted legally distinct claims for loss of consortium as a result of the deaths of Salgado and Cunningham-Terrill. The trial court recognized that the primary objective in any contract action is to achieve the intentions of the parties, and it gave effect to all parts and every word of the settlement agreement. In so

-11-

doing, the trial court did not err by concluding that more than one reasonable interpretation could be drawn from the mediator's use of the phrases "Estate of Arturo Salgado" and "Estate of Shana Dawn Cunningham-Terrill" in a list that identified only *five* claimants. The phrase "Estate of Shana Dawn Cunningham-Terrill" encompassed both the wrongful death claim of Cunningham-Terrill's estate and the entirely separate loss of consortium claims of her surviving spouse and minor child. Therefore, reading the agreement as a whole, one could reasonably conclude that the phrase "Estate of Arturo Salgado" could also refer to *both* the wrongful death claim of Salgado's estate *and* the legally distinct loss of consortium claim asserted by Sangabriel. This interpretation is especially true where wrongful death claims and loss of consortium claims are typically pursued together because there must be a determination that the death was wrongfully caused in both types of actions having been derived from the same injury. *Pete v. Anderson*, 413 S.W.3d 291, 302 (Ky. 2013).

Because the terms of the settlement agreement are ambiguous, the trial court properly considered parol evidence, including: the subject matter of the contract, the object to be accomplished, and the conduct of the parties to interpret its provisions. The trial court specifically considered the nature of a "tender limits" mediation; the affidavits of Brian House and Wilkening's counsel indicating that the singular objective of mediation was to reach a settlement of

every claim; correspondence among the attorneys that joined together the various loss of consortium claims with their respective wrongful death claim and abridged reference to them for the purposes of discussion and mediation; and omission by every claimant (every time) of any specific reference to the three outstanding loss of consortium claims. The trial court noted the unique nature of testimony from a mediator, a neutral and reliable witness. It found House's unwavering testimony (indicating that Sangabriel's loss of consortium claim had indeed been negotiated at the mediation) to be "clear and persuasive." It concluded that House did not fail to resolve -- nor did he omit -- the loss of consortium claims from the provisions of the settlement agreement. Accordingly, it interpreted the phrase "Estate of Arturo Salgado," as used in the settlement agreement, to include Sangabriel's loss of consortium claim. **No** parol evidence supports **exclusion** of Sangabriel's loss of consortium claim from the provisions of the settlement agreement. There was no error.

The remaining allegation concerning the payment of prejudgment interest with respect to settlement of the wrongful death claim is moot.

We affirm the judgment of the Laurel Circuit Court.


ALL CONCUR.

BRIEFS FOR APPELLANT:

Matthew S. Goeing
M. Stanley Goeing
Lexington, Kentucky

BRIEF FOR APPELLEE:

William B. Orberson
Paul J. Bishop
Ryan D. Nafziger
Louisville, Kentucky