RENDERED: JANUARY 3, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0509-MR

JUSTIN SMITH, INDIVIDUALLY
AND TANYA WALKER,[1] AS
ADMINISTRATOR OF THE ESTATE
OF FRANK SMITH                                                          APPELLANTS

APPEAL FROM MCCRACKEN CIRCUIT COURT
v.       HONORABLE WILLIAM ANTHONY KITCHEN, JUDGE
ACTION NO. 21-CI-00426

MORGAN & MORGAN KENTUCKY,
PLLC; DARYL DIXON; MORGAN &
MORGAN BOWLING GREEN, PLLC;
AND MORGAN & MORGAN
KENTUCKY MANAGEMENT, PLLC                                   APPELLEES

AND

NO. 2023-CA-1369-MR

JUSTIN SMITH, INDIVIDUALLY
AND TANYA WALKER, AS
ADMINISTRATOR OF THE ESTATE
OF FRANK DALE SMITH                                                    APPELLANTS

---

[1] On July 2, 2024, this Court granted a motion substituting Tanya Walker as administrator of the estate of Frank Smith.

v.     HONORABLE WILLIAM ANTHONY KITCHEN, JUDGE
ACTION NO. 21-CI-00426


MORGAN & MORGAN KENTUCKY,
PLLC; DARYL DIXON; MORGAN &
MORGAN BOWLING GREEN, PLLC;
AND MORGAN & MORGAN
KENTUCKY MANAGEMENT, PLLC                          APPELLEES


OPINION
AFFIRMING IN PART, VACATING IN PART, AND REMANDING

** ** ** ** **

BEFORE:  CALDWELL, A. JONES, AND TAYLOR, JUDGES.

CALDWELL, JUDGE:  Justin Smith, both individually and as administrator of the

Estate of Frank Smith (collectively "Appellants," individually "Justin," or "the

Estate"), appeals from the McCracken Circuit Court's decision granting summary

judgment to Appellees Morgan & Morgan Kentucky, PLLC; Morgan & Morgan

Bowling Green, PLLC; Morgan & Morgan Kentucky Management, PLLC

(collectively "Morgan & Morgan"); and Daryl Dixon ("Dixon"), an attorney at

Morgan & Morgan.  Appeal No. 2022-CA-0509-MR.  We affirm in part, vacate in

part, and remand for further proceedings.

Justin, individually, and Tanya Walker, as administrator of the Estate (collectively "Appellants"), also appeal from the denial of a CR 60.02 motion they filed in the same underlying circuit court action, Appeal No. 2023-CA-1369-MR. We affirm. In the interests of judicial economy, we resolve both appeals in this combined Opinion.

## RELEVANT FACTUAL AND PROCEDURAL HISTORY

The record in these cases is immense and the trial court proceedings have been lengthy and contentious. We have examined the entire record but shall relate only the facts necessary to understand the limited issues before us. Similarly, we have examined the many arguments in the parties' lengthy appellate briefs and we shall discuss only the arguments therein we conclude are necessary. All arguments raised in the briefs which are not discussed herein are irrelevant, redundant, without merit or raise concerns which are not absolutely necessary for us to address. *See Schell v. Young*, 640 S.W.3d 24, 29 n.1 (Ky. App. 2021).

These appeals were borne from tragedy.[2] Justin Smith's father, Frank Smith, was killed in a work-related automobile accident. At the time of his death, Frank[3] was unmarried and intestate but had three children relevant to this appeal:

---

[2] Because the trial court granted summary judgment against Appellants, we must relate, and construe, the facts in the light most favorable to them. *The Board of Regents of Northern Kentucky University v. Weickgenannt*, 485 S.W.3d 299, 307 (Ky. 2016).

[3] Several people involved in these appeals have the surname Smith. To avoid confusion, we use given names, with no disrespect intended.

Justin, Joshua, and Abigail (sometimes spelled Abagail in the record), a minor at the time of Frank's death.[4] Justin, who resided in Texas, was apparently then estranged from his family to the point where Frank's obituary listed Justin as having predeceased Frank.

A few weeks after Frank's death, Dixon sent a letter to Frank's employer's workers' compensation carrier, Accident Fund Insurance Company of America ("Accident Fund"), stating Morgan & Morgan represented Joshua "in a claim" for injuries against the driver of the other vehicle involved in Frank's fatal crash.

Approximately a month after Frank's intestate death, Justin came to Kentucky and met with some members of his family, including Joshua and Abigail's mother. The parties' briefs do not explicitly state whether Justin knew of Frank's death before coming to Kentucky.[5] One of Justin's aunts told him he should see the lawyers handling Frank's estate.

A few days after meeting with Justin, Joshua – via counsel Theodore Hutchins – filed a motion in the McCracken District Court to be appointed as the administrator of Frank's estate ("the Estate"). According to an order issued by the

---

[4] Frank's fourth child had been adopted by another family and so was ineligible under the laws of intestacy from receiving a portion of Frank's estate. Thus, we shall not further discuss her.

[5] Justin's affidavit states that he "discovered" Frank's obituary at a library in Kentucky (Record (R.) at 732), but it does not state definitively whether Justin already had learned of Frank's passing.

trial court, Dixon "asked Hutchins to serve as attorney for the estate while Dixon and Morgan & Morgan pursued the wrongful death action." Joshua's petition listed only himself and Abigail as Frank's heirs. In other words, Joshua's petition did not list Justin as one of Frank's heirs. Justin asserts he was not notified of the petition, and Appellees point to no specific evidence to the contrary.

A few days after Joshua filed his petition, Justin called and visited Morgan & Morgan's office in Paducah. Justin asked to speak to Joshua's attorney but was told that attorney was in a meeting. Justin claims he told some unspecified Morgan & Morgan personnel that he was Frank's oldest child. A few days later, the McCracken District Court appointed Joshua as the administrator of the Estate, allegedly without Justin's knowledge.

Hutchins later stated in a motion that, based on comments by Joshua and the contents of Frank's obituary, he (Hutchins) believed Justin was deceased when he (Hutchins) helped Joshua file the petition to be appointed as administrator of the Estate. Hutchins said he did not learn that Justin was alive until about a month after Joshua had been appointed as administrator.

A few weeks after Joshua was appointed as administrator, Accident Fund sent a lump sum settlement check for $87,421.45, payable to the order of Morgan & Morgan & the Estate of Frank Smith. Morgan & Morgan endorsed the back of the check, noting it was attorney-in-fact for Joshua, the Executor of the

Estate.[6]  It appears uncontested that Morgan & Morgan (the identity of the signatory is unclear) had not sought – and thus had not acquired – approval from a workers' compensation administrative law judge for the settlement or for any attorney fees.[7]  Indeed, the parties do not cite to the Estate having ever filed a formal claim for workers' compensation benefits.  Justin alleges Morgan & Morgan deducted over $12,000 in attorney fees from that check and gave the balance to Joshua who then allegedly absconded with those funds.  It is uncontested that Joshua was suffering from drug addiction at that time.

In April 2021, Hutchins moved to withdraw as counsel for Joshua in his role as administrator of the Estate.  Hutchins's motion asserts that he was "unable to communicate" with Joshua, who "has not accounted for assets of the estate despite numerous requests . . . to do so."  Dixon soon thereafter entered his

---

[6] Thus, the endorsement on the check supports Justin's contention that Morgan & Morgan was simultaneously the Estate's attorney at law and held power of attorney for the Estate.  *See, e.g.*, 2A C.J.S. *Agency* § 11 (2023) ("An attorney-in-fact is one given authority under a power of attorney to act as agent with respect to matters set forth therein . . . . An agent holding the power of attorney is termed an 'attorney-in-fact,' as distinguished from an attorney at law."); POWER OF ATTORNEY, BLACK'S LAW DICTIONARY (11th ed. 2019) ("An instrument granting someone authority to act as agent or attorney-in-fact for the grantor.").  However, the parties do not cite to a power of attorney form in the record.

[7] *See, e.g.*, Kentucky Revised Statute (KRS) 342.320(1) ("All fees of attorneys . . . shall be subject to the approval of an administrative law judge . . . ."); KRS 342.265(1) ("If the employee and employer . . . reach an agreement conforming to the provisions of this chapter in regard to compensation, a memorandum of the agreement signed by the parties or their representatives shall be filed with the commissioner, and, if approved by an administrative law judge, shall be enforceable pursuant to KRS 342.305.").

-6-

appearance as counsel for Joshua in his role as administrator.  A few days later, Justin filed a motion in district court to replace Joshua as administrator.

At a hearing on Hutchins's motion to withdraw, Dixon referred to "ongoing litigation" and stated he believed he could settle "the entire thing" in about six weeks.[8]  Justin asserts there was no litigation ongoing as no wrongful death complaint had been filed.  At the hearing, Hutchins noted his objection to Justin serving as administrator because "he's a felon" who "has served a significant amount of time in prison."  The district court granted Hutchins's motion to withdraw and directed Dixon to make "significant progress" toward settlement by June 7, 2021.

So, at that point, Morgan & Morgan apparently represented Joshua in two capacities:  individually (as an heir of Frank) and as administrator of the Estate.  That situation soon changed.

Soon thereafter, Morgan & Morgan (via Dixon) filed a motion to substitute Independence Bank ("the Bank") as administrator of the Estate.  The motion stated that Dixon "has secured the consent of Paul Bradford, a trustee at

---

[8] The comments related from sundry district court hearings contained in this Opinion are drawn from unofficial transcripts found in the record whose accuracy has not been attacked.

Also, we are aware that negotiations to settle disputes often occur prior to the filing of a lawsuit.  Such pre-suit negotiations help avoid the inevitable costs and delays inherent in seeking judicial relief.  However, *litigation* is defined as "[t]he process of carrying on a lawsuit" or "[a] lawsuit itself . . . ."  *Litigation*, BLACK'S LAW DICTIONARY (11th ed. 2019).

Independence Bank, to agree to assume the duties of administrator . . . ." The motion noted that Joshua was "facing various potential criminal charges" but Justin was "not a viable option as fiduciary as he is a convicted felon, having been in prison for crimes related to theft, robbery/burglary, parole violations and/or financial malfeasance and identity theft." *Id.* Justin admits to being a convicted felon but asserts the statements regarding his "imprisonment for robbery, financial malfeasance, and identity theft are false."

In a later affidavit, however, Bradford indicated Dixon had not presented him (Bradford) with the complete picture. Bradford averred that Dixon had only provided "limited information about the Estate" and so Bradford did not know prior to the Bank being appointed as administrator that "Justin Smith had petitioned for appointment as Administrator" or that "Justin opposed Joshua or that Joshua opposed Justin." Indeed, Bradford averred that the motion to substitute the Bank as administrator was filed without his knowledge.

At a hearing held in district court in late May 2021, Hutchins sought to re-enter as counsel for the administrator of the Estate. Justin's attorney admitted it was the court's discretionary "call" as to who to appoint as administrator of the Estate, but counsel stressed a statutory preference for appointment of the deceased's next of kin as administrator. However, it appears undisputed that Justin had not then filed the requisite written application to be appointed as administrator.

*See* KRS 395.015(1) ("Before being appointed as executor, administrator, curator, or administrator with the will annexed, every person shall make and file in duplicate a written application under oath . . . ."). Hutchins also stated that there was "some question" as to Justin's paternity. However, Justin asserts – and Appellees have not pointed to contradictory evidence in the record – he had emailed Hutchins a copy of official government documents listing Frank as his (Justin's) father before that hearing.

Dixon told the court that they were "very close on settlement in the overall wrongful death **case**, there was just one or two minor issues holding us up . . . ." (Emphasis added.) But, again, it appears undisputed that no wrongful death complaint had then been filed, so Dixon's reference to a "case" is curious. As used in this context, *case* means "[a] civil or criminal proceeding, action, suit, or controversy at law or in equity . . . ." *Case*, BLACK'S LAW DICTIONARY (11th ed. 2019).

The district court substituted the Bank as administrator of the Estate. Hutchins returned to the case as counsel for the Bank.

In a later affidavit, Bradford averred that Joshua "did not settle his accounts upon Independence Bank's appointment [as administrator], nor did he provide me with any Estate[-]related documents that might have come into his hands during his term [as Administrator of the Estate]." Joshua's failure to settle

his account is significant, as we shall later discuss, because KRS 395.325(1) provides that "[i]f any fiduciary resigns or is removed, he shall upon the appointment of his successor settle his accounts."[9]  The administrator of an estate is statutorily classified as a fiduciary under KRS 395.001(1).

A few weeks later, Justin filed the underlying circuit court action. Even though Justin was not yet the Estate's administrator, his sprawling complaint included a wrongful death claim.  Facially, it is unclear how Justin then had the authority to prosecute a wrongful death claim.  *See* KRS 411.130(1) (providing that a wrongful death action "shall be prosecuted by the personal representative of the deceased").[10]  The complaint also included other causes of action against other defendants, including Morgan & Morgan, Dixon, Hutchins, Bradford, the Bank, and Joshua.

---

[9] The district court also had an independent duty to require Joshua to settle his accounts.  *See* KRS 395.160(3) ("The court shall require a personal representative who is removed to settle his accounts, and deliver over the decedent's estate to the person appointed in his stead.").

[10] There are limited exceptions, such as "when a personal representative refuses to bring an action, the beneficiary may do so in her own name."  *Wheeler v. Hartford Acc. & Indem. Co.*, 560 S.W.2d 816, 819 (Ky. 1978).  The terms *personal representative* and *administrator* are synonyms, at least for purposes of these appeals.  For example, KRS 413.130(1) requires a "personal representative" to bring a wrongful death action, but we have held that "a wrongful-death action can only be brought by the estate's lawful representative, either the executor or administrator."  *Bennett v. Nicholas*, 250 S.W.3d 673, 675 (Ky. App. 2007).  "Technically, an executor is a personal representative named in a will, while an administrator is a personal representative not named in a will."  *Personal Representative*, BLACK'S LAW DICTIONARY (11th ed. 2019).

As a result, Hutchins filed a motion to withdraw as counsel for the Bank due to a conflict of interest between he and his client presented by the fact that each was a named defendant. The district court granted his motion to withdraw. The same order removed Morgan & Morgan without specifying the capacity in which that firm was involved in the district court action at that time.[11]

In early August 2021, the district court appointed Justin as the Estate's administrator. Later that month, the circuit court granted Justin's motion to file a second amended complaint. Although that complaint is not a model of pleading clarity, as we construe it relevant to these appeals, the complaint raises a host of

---

[11] The order contains highly stilted language, so it is not readily apparent why Morgan & Morgan was mentioned since the basis for the order was Hutchins's motion to withdraw as counsel for the Bank. The entirety of the order is:

Motion having been made by Whitney J. Denson, Esq., Stephen E. Smith, Jr., Esq., and the law firm of McMurry & Livingston, PLLC to be substituted as counsel for Independence Bank of Kentucky, Administrator of the Estate of Frank Dale Smith, deceased, and the Court being duly advised thereof;

**IT IS HEREBY ORDERED AND DIRECTED** that Whitney J. Denson, Esq., Stephen E. Smith, Jr., Esq., and McMurry & Livingston, PLLC shall henceforth be substituted as counsel of record for Independence Bank of Kentucky, Administrator of the Estate of Frank Dale Smith, deceased, in the place and stead of Theodore S. Hutchins, Esq., and the law firm of Keuler Kelly Hutchins Blankenship & Sigler, LLP and in the place and stead of Daryl Dixon, Esq., and the law firm of Morgan and Morgan.

R. at 766.

claims against Morgan & Morgan[12] and Dixon, such as defamation, failure to provide an accounting, breach of fiduciary duty, and legal malpractice.

In response, Morgan & Morgan and Dixon filed a combined partial motion to dismiss. Justin stresses that the motion was only partial because it did not facially seek dismissal of Counts I, II, and VI of the complaint. However, Count I is a wrongful death claim against the other driver involved in Frank's fatal collision and Count II is an underinsured motorists claim against Frank's employer's insurer. Those counts are not germane here.

Count VI is terse but appears to contain multiple claims for relief. First, it alleges Morgan & Morgan and Dixon asked Bradford and the Bank to become the administrator of the Estate "under false premises, and with Morgan & Morgan and Daryl Dixon acting outside their agency." Count VI then alleges Bradford and the Bank violated fiduciary duties each owed to Justin.

The motion to dismiss asserted, among other things, that any claims that Morgan & Morgan or Dixon had improperly prevented Justin from becoming administrator of the Estate were moot since he had been appointed to that position by the district court. They also asserted the claim regarding their alleged conflict of interest regarding their representation of Joshua in two roles was moot because

---

[12] The complaint named various Morgan & Morgan entities as defendants, including Morgan & Morgan Kentucky, PLLC, Morgan & Morgan Bowling Green, PLLC, and Morgan & Morgan Kentucky Management, PLLC.

they no longer represented anyone in the wrongful death litigation and, in any event, Justin had suffered no damages as he and his chosen counsel were then actively prosecuting the wrongful death case. In any event, Morgan & Morgan and Dixon argued they could not have violated any fiduciary duties toward Justin because they never owed him any such duties.

Eventually, in December 2021, the trial court issued an omnibus order which resolved several issues, including granting the motion to dismiss made by Morgan & Morgan and Dixon.[13] The court held those defendants owed Justin no duty to help him be appointed administrator of the Estate and that any allegedly defamatory statements were privileged because they were made in the course of, and pertinent to, judicial proceedings. *See, e.g.*, *Smith v. Hodges*, 199 S.W.3d 185 (Ky. App. 2005). The court also held that those defendants did not breach any professional duties to Justin, nor had he set forth a viable legal malpractice claim.

The portion of the order dismissing Justin's claims stated that it was final and appealable but did not say there was no just cause for delay. That omission, though seemingly technical and picayune, was significant.

---

[13] The trial court also dismissed the claims against Hutchins, the Bank, and Bradford, but the propriety of those dismissals is not before us and so we express no opinion thereon. We similarly express no opinion on any claims not resolved by the summary judgment order at issue, such as those against Joshua.

-13-

CR[14] 54.01 defines a "final or appealable judgment" as "a final order adjudicating all the rights of all the parties in an action or proceeding, or a judgment made final under Rule 54.02." Justin's wrongful death action was unaffected by the dismissal of his claims against Morgan & Morgan and Dixon. Thus, the order was not inherently final and appealable because it did not conclusively resolve *all* aspects of the suit involving *all* parties thereto.

Therefore, the order could only be final and appealable if made so under the rubric found in CR 54.02. But CR 54.02(1) provides in relevant part that if multiple claims for relief are presented, or multiple parties involved in an action:

> the court may grant a final judgment upon one or more
> but less than all of the claims or parties only upon a
> determination that there is no just reason for delay. The
> judgment shall recite such determination and shall recite
> that the judgment is final. In the absence of such recital,
> any order or other form of decision, however designated,
> which adjudicates less than all the claims or the rights
> and liabilities of less than all the parties . . . is
> interlocutory . . . .

In short, the order was not final and appealable because "an interlocutory order may only be made final and appealable if the order includes both recitations – (1) that there is no just cause for delay, and (2) the decision is final. Strict compliance with the rule is required" and so "[a] trial court's failure to

---

[14] Kentucky Rule of Civil Procedure.

conclude both recitations in a judgment renders it interlocutory and nonappealable." *Vorherr v. Coldiron*, 525 S.W.3d 532, 540 (Ky. App. 2017) (citations omitted).

Recognizing the finality problem, Justin filed a motion to alter, amend, or vacate pursuant to CR 59.05. Justin's motion was not aimed at substantively changing the trial court's analysis; instead, it only sought to clarify whether the court intended to make the order final and appealable. Eventually, the trial court granted Justin's motion to the limited extent that it made the order final and appealable. Appeal No. 2022-CA-0509-MR followed.[15] We shall later address the subsequent procedural history underlying Appeal No. 2023-CA-1369-MR.

## ANALYSIS

### Appeal No. 2022-CA-0509-MR

**Summary Judgment Standards of Review**

Appellees filed a motion to dismiss. But it is not clear whether the trial court dismissed Justin's claims under CR 12.02 or granted summary judgment to Appellees under CR 56.02 since the order recites both standards.

---

[15] Issuance of this Opinion was delayed due to our having placed Appeal No. 2022-CA-0509-MR in abeyance to allow the trial court to rule on a CR 60.02 motion for post-judgment relief.

Appellants broadly assert in their brief that "a motion to dismiss for failure to state a claim is treated as a motion for summary judgment."  A motion to dismiss *may* be converted to, *i.e.*, "treated as," a motion for summary judgment, as we shall discuss.  However, a motion to dismiss is not invariably converted to a motion for summary judgment.  The concepts are related, but they are not interchangeable procedural synonyms, as we explained in *Schell*, 640 S.W.3d at 33.

"Kentucky Rule of Civil Procedure (CR) 12.02 mandates that a motion to dismiss is converted to a motion for summary judgment if matters outside the pleadings are presented to, and not excluded by, the circuit court . . . ." *Id.*  There are some limited exceptions, *id.*, but they are not present here.  The only documents listed as *pleadings* in CR 7.01 are "a complaint and an answer; a reply to counterclaim denominated as such; an answer to a cross-claim, if the answer contains a cross-claim; a third-party complaint . . . ; and a third-party answer . . . ." *See also, e.g.*, *River City Fraternal Order of Police Lodge 614, Inc. v. Louisville/Jefferson Cnty. Metropolitan Government*, 585 S.W.3d 258, 265 n.12 (Ky. App. 2019).  The voluminous record contains many documents which are not encompassed by that discrete list.

For example, the record contains several affidavits.  There is no indication the trial court excluded the affidavits, or the other extra-pleading

-16-

materials. Consequently, we must construe the order at issue as one granting summary judgment. *See, e.g.*, *Bennett v. Nicholas*, 250 S.W.3d 673, 675 (Ky. App. 2007) (converting a motion to dismiss to a motion for summary judgment because "[t]he circuit court allowed the parties to file various depositions and affidavits in the record before ruling on the motions to dismiss").

According to our Supreme Court:

> The standard of review on appeal of a summary judgment is whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law. We review a trial court's summary judgment ruling *de novo*. We must also view the record in a light most favorable to the nonmoving party and resolve all reasonable doubts in that party's favor.

*Peterson v. Foley*, 559 S.W.3d 346, 348 (Ky. 2018) (internal quotation marks and citations omitted). Because the summary judgment standard applies and guides our review, Appellants' arguments that the trial court failed to apply properly the strict standards governing motions to dismiss under CR 12.02 are moot.

**No Abuse of Discretion in Making the Summary Judgment Order Final and Appealable**

We begin our analysis with Appellants' curious argument that the trial court erred by making the order granting summary judgment to Morgan & Morgan and Dixon final and appealable. Appellants bear a heavy burden to prevail on this issue as "the trial court has broad discretion in making a determination of whether

an order is final and appealable under CR 54.02." *UPS Capital Business Credit v. C.R. Cable Const., Inc.*, 181 S.W.3d 44, 47 (Ky. App. 2005).

When the trial court orally indicated it planned on granting Appellees' motion to dismiss, Justin's attorney expressly asked the court to separate that dismissal from the issues involving the motor vehicle accident (*e.g.*, the wrongful death claim). Nonetheless, Appellants now argue the trial court erred by doing just that. We emphatically decline to allow Appellants to take a position on appeal which directly opposes the position they took in the trial court. "[A] party cannot ask a trial court to do something and, when the court does it, complain on appeal that the court erred." *Tackett v. Commonwealth*, 445 S.W.3d 20, 29 (Ky. 2014).

Appellants' argument would fail even if we leniently examined it on the merits. Despite arguments to the contrary, the issues presented in the claims involving the motor vehicle accident not resolved by the summary judgment at issue are distinct and not inextricably intertwined with the separate claims involving Appellees. The trial court did not abuse its discretion by choosing to make the grant of summary judgment to Appellees final and appealable.

**Summary Judgment Proper as to Defamation Claims**

Appellants contend Appellees defamed Justin by questioning his paternity and incorrectly naming some crimes for which he had been convicted.

-18-

We reject those arguments because we agree with Appellees that the judicial statements privilege applies.

According to a recent opinion of our Supreme Court, "[t]he term 'judicial statement(s) privilege' appears to be specific to Kentucky . . . . Throughout the rest of the United States this privilege appears to most commonly be referred to as the 'litigation privilege' although it may alternatively be called the 'judicial privilege' or the 'defamation privilege.'" *New Albany Main Street Properties, LLC v. Stratton*, 677 S.W.3d 345, 347 n.1 (Ky. 2023). Notwithstanding its idiosyncratic nomenclature, Kentucky has recognized the judicial statements privilege since the antebellum period:

> The principle is well settled and is indeed essential to the ends of justice, which demand that there should be a free resort to judicial tribunals and to the remedies furnished by the law, that words spoken or written in the course of justice, and pertinent to a legal proceeding within the jurisdiction of the tribunal to which they are addressed and to the remedy sought in that tribunal, are not actionable though they be false, unless the proceeding were resorted to merely for the purpose of conveying the scandal and as a cover for the malice of the party, and not in good faith as a remedy for the assertion of a right or the redress of a wrong.

*Forbes v. Johnson*, 11 B.Mon. 48, 50 Ky. 48, 51 (1850).

That ancient principle makes statements made in judicial proceedings "absolutely privileged when material, pertinent, and relevant to the subject under inquiry, though it is claimed that they are false and alleged with malice." *Schmitt*

*v. Mann*, 291 Ky. 80, 163 S.W.2d 281, 283 (1942).  The judicial statements privilege should be "applied liberally" and is applicable if the statements at issue "had some relation to the subject matter" of the lawsuit during which they were made.  *Hodges*, 199 S.W.3d at 194.

Here, it is beyond reasonable dispute that, since Frank died intestate, it was necessary to determine his heirs in order to properly distribute his estate.  Therefore, although understandably irksome to Justin, the statements regarding his paternity were relevant and, as such, are absolutely privileged.

A similar conclusion applies to the statements regarding Justin's criminal history.  One of the matters the district court had to resolve was appointing an administrator for the Estate.  Since Frank died without a spouse, the court had discretion to choose whom to appoint to that role.  KRS 395.040; *Yeary v. Yeary*, 351 S.W.2d 515 (Ky. 1961).  Because the district court had to choose whom to appoint as administrator, the character and fitness of each potential appointee was a potentially relevant factor.  Therefore, a potential appointee's criminal history bore "some relation" to the probate proceedings.  Thus, even if some of the details in them are not wholly accurate, the statements made by Appellees at issue regarding Justin's criminal history fall under the impenetrable shield of the judicial statements privilege.

Finally, Appellants assert Appellees also made out-of-court defamatory statements. The extremely bare bones defamation count (which contains only one paragraph) in the second amended complaint, however, contains no specific references to *any* defamatory statements, out-of-court or otherwise. Instead, the defamation claim generically alleges that Appellees "made false statements about Justin Smith, reasonably understood by persons who heard the statements that [sic, presumably "to"] question Justin Smith's paternity and accuse Justin Smith of robbery, financial malfeasance, and identity theft." Even now, Appellants do not point to *any* identifying information about the alleged extrajudicial defamatory statements. Instead, Appellants rhetorically ask "[w]hat actionable words did Morgan say out of court, when, and to whom?" Those are appropriate questions, but to present a viable cause of action Appellants must do more than ask them – they must answer them.

"[S]ummary judgment is . . . appropriate in cases where the nonmoving party relies on little more than speculation and supposition to support his claims." *Blackstone Mining Co. v. Travelers Ins. Co.*, 351 S.W.3d 193, 201 (Ky. 2010) (internal quotation marks and citation omitted). Thus, speculation that an unknown Appellee *might* have made an unknown defamatory statement about Justin to an unknown person on an unknown date at an unknown place in an unknown context does not present a viable claim for defamation, even without

-21-

broad discovery having occurred.[16]  Indeed, our Supreme Court has recently rejected an essentially identical argument.  *New Albany Main Street Properties, LLC*, 677 S.W.3d at 349 ("We will not require additional discovery so that Port of Louisville can go on a fishing expedition to try to establish other allegedly defamatory statements.  The possibility of the existence of other as of yet unknown and unpled defamatory statements not subject to the privilege cannot save this cause of action; it will continue or be extinguished based upon the statements offered during the arbitration which were the only potentially tortious acts alleged in the complaint.").

In short, even construing the evidence in the light most favorable to them, Appellants have not presented a viable claim for defamation.  We understand that the statements at issue contained upsetting allegations.  Nonetheless, they are

---

[16] Appellants cite to an affidavit Bradford submitted to support their defamation claims but the affidavit's relevance to the defamation claims is unclear.  The only references to Justin in the affidavit are that Bradford was not told of the conflict between Justin and Joshua before the Bank was appointed as administrator.  Even if we accept that the affidavit is true and Appellees did not disclose that conflict to Bradford in a timely manner, the failure to do so is not the stuff from which a defamation claim is made.  *See, e.g.*, *Toler v. Süd-Chemie, Inc.*, 458 S.W.3d 276, 281 (Ky. 2014) (discussing the elements of a defamation claim).  Similarly, Appellants assert Morgan & Morgan "does not deny it made false out of court statements to Joshua Smith."  Appellants' Brief, p. 27 (emphasis omitted).  But Appellants cite only generically to a twenty-page-long motion to support that claim.  It is not our responsibility to scrutinize that lengthy motion to ascertain the necessary "who, what, when and where" details of the allegedly defamatory statements; instead, Appellants bear the burden of providing ample, correct pinpoint citations to support their arguments.  *See, e.g.*, *Prescott v. Commonwealth*, 572 S.W.3d 913, 918-19 (Ky. App. 2019).  Moreover, Appellees' motion specifically argues that any challenged statements were privileged under Kentucky law.

absolutely privileged. "We recognize that the judicial statements privilege is not without cost. However, our Courts have adjudged . . . that the free and unfettered administration of justice requires such a cost even where in some instances the privilege will immunize despicable, defamatory conduct." *Id.* at 350.

**The Judgment Applies to All Appellees**

Next, Appellants argue the trial court did not dismiss Dixon and all three Morgan & Morgan entities. Appellants' argument is based on the unfortunate fact that the summary judgment order does not specify the defendants to which it applies.

Appellants are not entitled to appellate relief for three main reasons.

First, Appellants have not shown where they raised this issue in the trial court. They state in their brief that they raised it in their second amended complaint. That complaint does name various Morgan & Morgan entities as defendants, as well as Dixon. But the complaint does not address the lack of specificity in the judgment regarding the defendants to which it applies – nor could it have since a complaint is perforce filed prior to the issuance of a judgment. And Appellants did not later ask the trial court to clarify to whom the judgment applies, even though they filed a CR 59.05 motion to alter, amend, or vacate. A plethora of precedent makes plain that a party is prevented from raising a new theory for relief on appeal. *See, e.g.*, *Jones v. Livesay*, 551 S.W.3d 47, 52 (Ky. App. 2018).

Second, even if we ignored the fact that Appellants' argument is newfound, it is fatally terse and conclusory. Specifically, the argument is one substantive paragraph long and contains zero citations to authority. "[T]hreadbare recitals of the elements of a legal theory, supported by mere conclusory statements, form an insufficient basis upon which this Court can grant relief." *Id.*

Third, Appellants' argument is illogical. The complaint named various Morgan & Morgan entities as defendants. The complaint does not specify with precision which Morgan entity performed (or failed to perform) which task which gave rise to the complaint. Indeed, the precise roles the various Morgan & Morgan entities performed vis-à-vis the relevant underlying facts and causes of action at issue remain hazy. Those sundry Morgan & Morgan defendants, along with Dixon, collectively filed a supplemental motion to dismiss (actually a motion for summary judgment, as we have discussed), in response to the second amended complaint. It is beyond reasonable dispute that the motion was jointly brought by Dixon and *all* of the Morgan & Morgan entities.

Appellants have pointed to *nothing* specific in the complaint, the motion to dismiss, their response thereto or the trial court's summary judgment order which indicates *any* intent to sever *any* of the Morgan & Morgan defendants, or Dixon, from each other such that one or more would somehow be exempt from the summary judgment order. Instead, it appears inescapable that the parties and

the trial court all adopted an "all for one, one for all" approach to the claims against the Morgan & Morgan entities and Dixon.

In sum, the judgment would have been clearer and more precise if it specifically discussed and named each defendant. However, under these facts, the judgment's regrettable lack of specificity does not entitle Appellants to relief.

**Appellees Not Required to Provide an Accounting**

Appellants argue Appellees failed to submit a mandatory accounting. It is undisputed that Appellees did not submit an accounting. But Appellants have cited no mandatory authority which required Appellees to do so.

KRS 395.325(1) provides that "[i]f any fiduciary resigns or is removed, he shall upon the appointment of his successor settle his accounts." But *fiduciary* is defined in relevant part by KRS 395.001(1) as "any person, association, or corporation . . . appointed by, or under the control of, or accountable to, the District Court, including executors, administrators, administrators with the will annexed, curators, guardians and conservators . . . ." Joshua met that definition when he was the Estate's administrator, but Appellees facially do not (even if they were, at least for a time, Joshua's attorney at law and attorney in fact). And Appellants have pointed to no other binding authority which makes any Appellee a fiduciary in this context or otherwise requires counsel for a

fiduciary to submit an accounting. Consequently, we affirm granting summary judgment to Appellees on the failure to submit an accounting claim.[17]

**Summary Judgment Proper on Claim that Appellees Colluded to Prevent Justin from Being Appointed as Administrator**

Though not explicitly phrased as such, we construe the gist of one of Justin's claims to be that Appellees colluded to prevent him from being appointed as administrator of the Estate. We affirm granting summary judgment to Appellees on this issue.

First, this issue is seemingly rendered moot because Justin was appointed as administrator, and he points to no specific compensable damages stemming from any alleged delay in his appointment. Second, in any event, the decision of whom to appoint as administrator was, at least under these facts, within the district court's discretion. Appellees were permitted to argue why their client, not Justin, should receive that appointment. Appellants have not shown the arguments in question here rose to the level of being an actionable conspiracy or a breach of a fiduciary duty. *See, e.g.*, *Peoples Bank of Northern Kentucky, Inc. v. Crowe Chizek and Co. LLC*, 277 S.W.3d 255, 261 (Ky. App. 2008) ("In order to prevail on a claim of civil conspiracy, the proponent must show an

---

[17] Accordingly, we need not address Appellees' argument that this issue is moot because, after this appeal was filed, "Dixon and Morgan produced records in the Probate Court establishing that they provided Josh the Worker's [sic] Compensation Lump Sum via a check issued to Josh as administrator of the Estate, and that Josh cashed it." Appellees' Brief, p. 2-3.

unlawful/corrupt combination or agreement between the alleged conspirators to do by some concerted action an unlawful act."). Third, Justin could not properly have been appointed administrator until he filed the requisite application, KRS 395.015(1), and it appears undisputed that he did not submit an application until well after he filed the complaint which gave rise to this action. The Appellees, singularly or collectively, could not have improperly denied Justin the ability to be appointed to an office to which he was not statutorily eligible. In short, Appellees were entitled to summary judgment on this claim.

**No Error in Granting Summary Judgment on Claims Involving Appellees Giving the Workers' Compensation Settlement Check to Joshua, But Summary Judgment Was Improperly Granted as to Appellees' Deducting Attorney Fees from the Settlement Amount**

It is uncontested that Appellees received a lump sum workers' compensation settlement check due to Frank's death and distributed that check to Justin, after deducting attorney fees. As we construe the sometimes-murky briefs, Appellants raise two overarching, related issues stemming from those facts. First, Appellants contend it was improper for Appellees to deduct attorney fees from that settlement check before giving it to Justin. Second, Appellants contend it was improper for Appellees to give the entire settlement check to Justin.

As to the attorney fee deduction, Count III of the complaint discusses Appellees' giving a check for $87,421.25 to Joshua, who was the administrator at that time. That complaint does not specifically state that Appellees acted

improperly by deducting attorney fees from the settlement before providing the check for the remainder to Joshua. However, Count V asserts that Appellees "must be disgorged of any attorney fees they have received . . . ." Thus, though the complaint is not optimally clear, it minimally provides Appellees "fair notice" that Appellants seek to recover those attorney fees. *Watson v. Landmark Urology, P.S.C.*, 642 S.W.3d 660, 671 (Ky. 2022) (holding that "a complaint is merely required to give a defendant fair notice and identify the claim.").

The parties have provided few specifics about the workers' compensation settlement and the distribution of settlement funds. For example, the parties have not pointed to where in the record we may view the attorney-client agreement between Appellees and Joshua and/or the Estate.[18] Based on the record which existed at the time Appeal No. 2022-CA-0509-MR was filed it is possible that agreement expressly allowed Appellees to take a portion of the workers' compensation settlement. Or not. And therein lies the summary judgment rub because summary judgment is proper only if it is, in a practical sense, impossible

---

[18] As we shall discuss when analyzing Appeal No. 2023-CA-1369-MR, Joshua testified in his post-judgment deposition that no such agreement ever existed. However, because summary judgment was granted, Morgan & Morgan has apparently not had a complete opportunity to conduct discovery or supplement the record with contrary evidence on that issue.

for the nonmoving party to prevail.  *See, e.g.*, *Jones v. Board of Educ. of Laurel Cnty.*, 295 S.W.3d 120, 121 (Ky. App. 2008).[19]

Here, it is entirely possible that Appellees scrupulously abided by the terms of the settlement agreement and their representation agreement when they deducted attorney fees from the lump sum settlement before distributing the balance to Joshua.  But it is also possible – or at least it is not impossible – that Appellees took more in attorney fees than the amount to which they were entitled.  In other words, the parties have not shown where in the vast record which was before the trial court at the time it granted summary judgment to Appellees, we may ascertain with certainty that Appellees acted wholly properly when they deducted attorney fees from the workers' compensation settlement.  As such, the trial court erred by granting summary judgment to Appellees on that claim.

---

[19] We recognize the claims made in Appellants' CR 60.02 motion filed while this appeal was pending regarding, among other things, the lack of a fee agreement between Joshua and the Estate and Morgan & Morgan.  However, the evidence cited in that post-appeal CR 60.02 motion was not presented to the trial court prior to the issuance of the summary judgment at issue.  Consequently, we decline to consider that post-judgment evidence in resolving this appeal.  *See, e.g.*, *White v. White*, 883 S.W.2d 502, 505 (Ky. App. 1994) (holding that "[t]he insertion of the promissory note in the hospital's brief at this stage of the proceedings is an improper attempt to introduce evidence outside the record.  Since our review is limited to the pleadings and evidence considered by the circuit court, we decline to consider the promissory note in reaching our decision . . . ."); *Martingale, LLC v. City of Louisville*, 151 S.W.3d 829, 832 (Ky. App. 2004) ("As an appellate Court, we generally do not consider matters outside the record.  Therefore, the City's attempted reliance on matters not presented to the circuit court until well after this appeal was filed is not well taken.  Rather, any issue regarding Martingale's standing in the underlying condemnation action must be addressed in a subsequent appeal taken from the circuit court's final resolution of the matter . . . .") (footnote omitted).  We will return briefly to this topic when we consider Appeal No. 2023-CA-1369-MR.

However, the trial court properly granted summary judgment to Appellees on the claim that they erred by distributing the entire settlement check to Joshua instead of parceling out 1/3 shares each to Joshua, Justin, and Abigail. It appears undisputed that the lump sum settlement was an asset of the Estate. For example, though the parties have not pointed to where we may view the settlement documents so we cannot know precisely what language appears therein, KRS 342.750(6) provides in relevant part that "if death occurs within four (4) years of the date of injury as a direct result of a work-related injury, a lump-sum payment of fifty thousand dollars ($50,000) shall be made to the deceased's estate . . . ." Joshua was, at that time, the administrator of the Estate.

KRS 395.195(22) expressly permits an administrator to "[s]atisfy, settle or compromise claims and distribute the estate as provided by law . . . ." And KRS 395.240 states that "[a] personal representative may compromise and settle any claim or demand for damages growing out of injury to or the death of the decedent." Thus, Joshua in his role as administrator had the power to settle the workers' compensation claim.[20]

Moreover, Appellants have not shown that it is improper to settle a potential workers' compensation claim prior to filing a formal application for

---

[20] Again, as will be discussed in Appeal No. 2023-CA-1369, Appellants do not seem to actively contest the amount of the workers' compensation settlement but allege impropriety in Morgan & Morgan deducting allegedly unauthorized attorney fees from that settlement amount.

workers' compensation benefits. Many civil cases are settled prior to the filing of a complaint for reasons of expediency and cost savings, and we have not been directed to any authority which prevents a similar pre-filing settlement in the workers' compensation context. In fact, our Supreme Court has seemingly found such a settlement to be unremarkable, albeit in an unpublished opinion. *See, e.g.*, *Westerfield v. Diversified Health Care, Inc.*, No. 2003-SC-0758-WC, 2004 WL 2913224, at *1 (Ky. Dec. 16, 2004) (cited solely as an example of a similar settlement) (discussing without criticism a situation where "[a]lthough the claimant did not file an application for benefits with respect to the 1996 injury, she and her employer agreed to settle the matter on September 9, 1999, for a lump sum of $20,672.20 that was based upon a 20% permanent partial disability . . . .").

Of course, had a formal claim for workers' compensation benefits been filed, the settlement agreement and attorney fee deduction would have been subject to the approval of an administrative law judge (ALJ). KRS 342.320(1); KRS 342.265. But, since no formal claim for benefits was filed, Appellants have cited no authority requiring this settlement to have been approved by an ALJ. Indeed, it is difficult to comprehend as a practical matter how an ALJ could have approved (or rejected) the settlement of a non-existent workers' compensation claim.

Appellants argue it was improper to give the check to Joshua, due to his addiction and then-pending criminal charges. But Appellants have not pointed to authority which required Appellees to give the check to anyone else, such as distributing 1/3 shares each directly to Justin, Joshua, and Abigail. Appellants rely on Kentucky Supreme Court Rule (SCR) 3.130(1.15), which generally requires a lawyer to safely keep and properly distribute property belonging to clients. But subsection (b) requires a lawyer to, generally, "promptly deliver to the client any funds or other property that the client is entitled to receive . . . ." Appellees complied with that rule by promptly delivering the settlement funds to Joshua, who was at the time the duly appointed personal representative of the Estate. Any improper conduct by Joshua after receiving the check is a matter outside the limited scope of the issues squarely presented to us here.

Similarly, we reject Appellants' arguments that Appellees violated SCR 3.130(1.15) by not "promptly render[ing] a full accounting regarding such property" upon request by the client. Justin was not the client of Appellees at the time the settlement was reached because he was not then the administrator of the Estate. Appellees did not owe him, a non-client, an accounting under SCR 3.130(1.15). The settlement check was an asset of the Estate, not the individual heirs. Therefore, providing the check to the Estate's administrator was not a *prima facie* violation of any professional or fiduciary duties owed by Morgan & Morgan

or Dixon. In short, Appellants are not entitled to relief under SCR 3.130(1.15). *Cf. Zurich Ins. Co. v. Knotts*, 52 S.W.3d 555, 558 (Ky. 2001) (holding that, generally, courts decide questions of law, such as the admissibility of evidence, and "leave ethical matters to the bar").

Generally, real estate owned by an intestate decedent passes directly to the heirs but "title to personal property must first pass through administration, and does not descend directly to the statutorily designated heirs as does real property." *Wood v. Wingfield*, 816 S.W.2d 899, 902 (Ky. 1991). In other words, Appellants have not shown error in Appellees providing the workers' compensation settlement check to Joshua, as the administrator of the Estate. Once he received the check, Joshua was responsible for distributing the settlement proceeds properly and timely. *See, e.g.*, 4A *Ky. Prac. Methods of Prac*. § 27:90 (2022) ("It is the primary duty of the personal representative to pay the estate debts that have been duly proven and to then distribute the surplus of the decedent's estate, if any, in accordance with the statutes or will . . . .") (footnotes and citations omitted). In short, Appellees did not err by providing the settlement check to the administrator of the Estate and any failure thereafter to distribute appropriately the settlement check would fall on Joshua.[21]

---

[21] Given our conclusion, we need not address Appellees' argument that these issues are moot because "Justin has sought and received a restitution order from the Probate Court permitting Justin to deduct from Josh's portion of the wrongful death settlement the amount of the workers'

**The Duties Appellees Owed to Justin**

Having cleared the considerable underbrush, we come to the heart of this first appeal: Appellants' sundry arguments that Appellees violated duties they owed to Justin. In response, Appellees contend they cannot have violated any duties because they owed no duties to Justin. "Of course, a party may pursue a malpractice action against an attorney only if that party has standing to do so by virtue of being owed professional duties by the attorney." *Pete v. Anderson*, 413 S.W.3d 291, 295 (Ky. 2013). The trial court agreed with Appellees. We agree with the trial court in part but also disagree in part.

The leading case on the duties Appellees owed Appellants regarding the wrongful death claim is *Pete*, *supra*, which we will discuss in detail due to its direct relevance here.

In *Pete*, a work-related vehicular accident caused a death. The decedent was survived by his wife and four children, two of whom were minors. *Pete*, 413 S.W.3d at 294. The wife, as personal representative of her husband's estate, retained attorneys to file a wrongful death claim and a loss of spousal consortium claim against the entity charged with maintaining the vehicle which the

compensation lump sum payment that Josh converted." Appellees' Brief, p. 2. Again, that refers to evidence which was not before the trial court when it granted summary judgment to Appellees. Moreover, Joshua is not a named Appellee in either appeal, so his alleged misconduct is not properly before us.

-34-

decedent was driving when he was killed; however, those claims were dismissed after the defendant was able to exclude two of the plaintiffs' expert witnesses. *Id.*

Once the two minor children reached the age of majority, they filed a malpractice action against the attorneys who had represented the Estate in the wrongful death action. The attorneys sought summary judgment, arguing "there was no attorney-client relationship between [themselves] and the children, and that any other claims of the estate were barred by the statute of limitations." *Id.* The trial court granted the attorneys' motion because it concluded the attorneys were not in privity with the children and thus the children "lacked standing to sue for professional negligence." *Id.* We reversed, and one of our conclusions was that "even if there was no privity, the children were owed professional duties because they were the intended beneficiaries of the underlying wrongful death action." *Id.*

Our Supreme Court granted the attorneys' motion for discretionary review and held in relevant part as follows:

> It is well settled that an attorney is liable to those parties who are intended to benefit from his or her services "irrespective of any lack of privity." *Hill v. Willmott*, 561 S.W.2d 331, 334 (Ky. App. 1978); *Seigle v. Jasper*, 867 S.W.2d 476 (Ky. App. 1993). As such, the beneficiaries of a given cause of action have standing to bring a malpractice action against an attorney for his or her breach of professional duties in connection with that action . . . .
>
> The personal representative is vested with the responsibility of bringing the action, but the

representative is not a statutory beneficiary entitled to recovery. The language of the early wrongful death statutes in Kentucky invited confusion regarding which party – the widow, heir, or estate – was entitled to institute a cause of action for wrongful death. As a result of this confusion, the drafters of [Kentucky Constitution] Section 241 explicitly identified the personal representative as the party who must prosecute the claim. Aligning with that constitutional mandate, KRS 411.130(1) directs that the estate's representative prosecute the claim. In the context of the statute as a whole, "prosecute" necessarily means "to commence and carry out a legal action." BLACK'S LAW DICTIONARY 1341 (9th ed. 2009). The statute does not accord any benefit of the recovery to the personal representative. With no interest in the recovery, the personal representative is a nominal party, as the real parties in interest are the beneficiaries whom the personal representative represents . . . .

Finally, this Court's recent decision in *Ping v. Beverly Enterprises, Inc.*, 376 S.W.3d 581 (Ky. 2012) puts to rest any dispute as to whether the statutory beneficiaries are the real parties in interest to a wrongful death action. In *Ping*, the administrator of the estate of a woman who had been a long-term care facility resident brought suit against the operators of the facility alleging negligence resulting in injuries causing the woman's death. 376 S.W.3d at 586. Our opinion, which resolved the question of whether a decedent can bind his or her beneficiaries to arbitrate a wrongful death claim, examined the distinction between the wrongful death statute and the survival statute, KRS 411.140. 376 S.W.3d at 598. We concluded that while a survival action is derivative of a personal injury claim which belongs to the estate, a wrongful death action is an independent claim belonging to the intended beneficiaries under KRS 411.130, a claim that "accrues separately to the wrongful death beneficiaries and is meant to compensate them for their own pecuniary loss."

> *Id.* at 598-99. Based on the plain language of KRS
> 411.130 and our holding in *Ping*, we must reject [the
> attorneys'] contention that the wrongful death action
> belongs to the estate.
>
> Accordingly, we find that [the minor children]
> were real parties in interest with regard to the wrongful
> death claim. As the intended beneficiaries of the claim,
> they were entitled to one-half of the proceeds of any
> recovery and thus, [the attorneys'] actions in litigating
> the claim must be construed as having been undertaken
> for [the minor children's] benefit. [The minor children]
> had standing to bring the malpractice claim . . . .

*Pete*, 413 S.W.3d at 297–301 (footnotes, some internal quotation marks, paragraph breaks, and citations also omitted).

There are the core takeaways from *Pete* relevant here. A wrongful death claim belongs to its intended beneficiaries. Indeed, our Supreme Court has emphatically held that "[u]nder Kentucky law, a wrongful death claim is a distinct interest in a property right that belongs *only* to the statutorily-designated beneficiaries." *Extendicare Homes, Inc. v. Whisman*, 478 S.W.3d 306, 314 (Ky. 2015), *vacated in part on other grounds by Kindred Nursing Centers Ltd. Partnership v. Clark*, 581 U.S. 246, 137 S. Ct. 1421, 197 L. Ed. 2d 806 (2017). Here, the intended beneficiaries are the three siblings: Joshua, Justin, and Abigail.

Second, an attorney pursuing a wrongful death claim owes duties to those "who are intended to benefit from" the attorney's services. *Pete*, 413 S.W.3d at 297. Accordingly, an attorney may owe professional duties to persons who did

-37-

not directly retain the attorney – *i.e.*, an attorney may owe duties to persons who are intended to benefit from the attorney's services "irrespective of any lack of privity" between the attorney and those intended beneficiaries. *Id.* (internal quotation marks and citations omitted). We therefore reject the trial court's conclusion – which Appellees vehemently insist is correct – that Appellees could not possibly have owed any duties to Justin because he was never their client.

The trial court's conclusion has some superficial appeal, but it is directly contrary to *Pete*. Instead, the holding of *Pete* means Appellees owed professional duties to Frank's beneficiaries: Joshua, Justin, and Abigail. The entire basis for the trial court's grant of summary judgment on the professional malpractice claims against Appellees regarding their handling of the wrongful death claim was based on the incorrect belief that Appellees owed Justin no duties. As that conclusion cannot be squared with *Pete*, the trial court's grant of summary judgment to Appellees on Justin's wrongful death claim cannot stand.

Lest our conclusion be misunderstood, we are not ruling that Appellees were negligent or engaged in professional malpractice in their handling of the wrongful death claim. Instead, we merely note that Appellees owed professional duties to Justin (and Joshua and Abigail) regarding that claim. Since the trial court's decision was based on a mistaken contrary conclusion (and without

any significant discovery on this point having been undertaken), we cannot determine as a matter of law that Appellees were entitled to summary judgment.[22]

On remand, and after appropriate discovery has occurred, Appellees may argue they did not breach any duties regarding the malpractice claim or that any claim is moot in light of the recent settlement (*i.e.*, that Appellants have not shown where they suffered compensable damages due to any violation of duties by Appellants regarding the wrongful death claim). At this stage, given the allegations in the complaint and the lack of complete discovery, Appellees have not shown this claim is unquestionably moot or that it would be impossible for Appellants to prevail on this claim. Accordingly, summary judgment is improper.

---

[22] Even if it is later ascertained that Appellees violated duties owed to Justin or the Estate, the entity to whom the duties were owed must prove that "the attorney's negligence was the proximate cause of damage . . . ." *Marrs v. Kelly*, 95 S.W.3d 856, 860 (Ky. 2003) (quotation marks and citations omitted). The trial court held that "[t]here is no allegation that Defendants' actions caused damage to Plaintiffs." R. at 1347. That is incorrect as the complaint does contain at least some assertions that the alleged malpractice harmed Appellants.

However, it appears undisputed that Justin, as administrator, has now settled the wrongful death claim. It is not clear whether that development precludes Appellants from demonstrating they suffered damages from the alleged misconduct of Appellees regarding the wrongful death claim. But complete discovery has not occurred. In short, though the damages allegedly suffered by Appellants stemming from Appellees' alleged failure to file and resolve timely a wrongful death claim are hazy, the trial court's ruling cannot stand because it is based on two incorrect conclusions (Appellees owed Appellants no professional duties regarding the wrongful death claim and the complaint sets forth no allegations of damages). Thus, we must vacate the grant of summary judgment. We are a court of review, not an initial decisionmaker. We express no opinion on whether discovery will enable Appellants to demonstrate damages on this point or will make plain that they suffered no such actionable damages.

A different conclusion applies to Appellants' other malpractice-based claims.[23] For example, Appellants contend that "Morgan's violation of their fiduciary duties is fraud." Our Supreme Court has held that "a breach of a fiduciary duty is equivalent to fraud." *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 487 (Ky. 1991). However, that holding was made in order to determine whether the attorney-client privilege could be used to prevent discovery of the file of an attorney. *Id.* Obviously, the factual scenario at hand is materially distinguishable. Plus, merely holding that a breach of fiduciary duty is the "equivalent" of fraud or "on an equal par with fraud" is not the same as holding that actionable fraud is always present if a fiduciary duty is breached. In short, we reject Appellants' arguments that every facially viable claim of attorney malpractice also invariably encompasses a viable claim for fraud.

---

[23] For example, Appellants argue that Appellees "denied Justin and Abigail their 1/3 shares of the wrongful death recovery." Appellants' Brief, p. 18. Appellants cite to *nothing* in the record before the trial court at the time it granted summary judgment to support that sweeping, damning allegation. Without the requisite supporting references, it is *extremely* unclear how Appellees denied Justin and Abigail their share of *any* wrongful death proceeds when it appears to be undisputed that: a) the wrongful death claim was not brought by Appellees during their tenure as counsel for Joshua but, instead, b) was brought by Justin and his chosen counsel and settled under his authority as administrator of the Estate.

We remind all counsel of their obligation to provide "ample references to the specific location in the record and citations of authority pertinent to each issue of law . . . ." Kentucky Rules of Appellate Procedure (RAP) 32(A)(4) and (B)(4). The unfortunate terseness of Appellants' arguments is rendered puzzling by the fact that they had roughly eight hundred words remaining before they hit the generous limit set by our January 30, 2023, order (which permitted them to submit a brief significantly longer than the standard word count limit imposed by RAP 31(G)(2)(a)). We decline to address claims not adequately developed and supported by cites to the voluminous record.

Moreover, nothing in *Steelvest, Inc.* facially overrules or circumvents the bedrock Kentucky pleading rule that "all allegations of fraud must be stated with particularity." *Keeton v. Lexington Truck Sales, Inc.*, 275 S.W.3d 723, 726 (Ky. App. 2008) (internal quotation marks and citation omitted). Here, we agree with Appellees that Appellants' allegations of fraud are fatally terse and conclusory.

Specifically, paragraph thirty-eight of the complaint alleges that Appellees, along with Joshua and Hutchins, "negligently, carelessly and with gross negligence violated their professional and fiduciary duties to Justin Smith" by failing "to exercise the degree of care and skill expected of reasonably competent lawyers . . . ." The only substantive allegations of fraud in the complaint follow in paragraph thirty-nine: "Morgan & Morgan, Daryl Dixon, Joshua Smith and Theodore Hutchins' violation of their fiduciary duties to [Justin] is the equivalent of fraud."

We agree with Appellees that such a conclusory, generic allegation fails to state the alleged fraud with sufficient particularity. As we have held, "[u]nder our law, an allegation of fraud in a pleading must set forth the time, place, and substance of the allegedly fraudulent statements." *Keeton*, 275 S.W.3d at 726. Because the complaint does not sufficiently set forth the requisite "who, what,

-41-

when, where, and how" details necessary to state a viable claim of fraud, we affirm the grant of summary judgment to Appellees on Appellants' fraud claims.

We also decline to accept Appellants' invitation to preemptively hold that Appellees are not entitled to any attorney fees. We have already concluded that summary judgment was improvidently granted on Appellants' claim that Appellees improperly took attorney fees from the lump sum workers' compensation settlement. Further proceedings in the trial court will resolve whether Appellees improperly deducted attorney fees from the lump sum settlement. But, at this stage, neither the trial court nor this Court has found that Appellees have engaged in actionable misconduct, so it would be improper for us to hold preemptively that Appellees are barred from receiving any attorney fees. If Appellees seek additional attorney fees, such as under a *quantum meruit* theory, the trial court shall resolve the motion based on application of settled law governing the award of attorney fees.[24] *See, e.g.*, *Mid South Capital Partners, LP v. Adkins*, 626 S.W.3d 688, 691 (Ky. App. 2020) (discussing pertinent factors to consider in awarding attorney fees and holding that "[w]hat can be gleaned from these factors in considering the reasonableness of attorney's fees is that a

---

[24] Appellants also state that we should direct Appellees to be "terminated with cause . . . ." Appellants' brief, p. 29. Since Appellees apparently no longer represent any parties to this action, it is difficult to understand the real-world practicalities of Appellants' request. Regardless, as no court has found that Appellees engaged in actionable misconduct, we decline Appellants' request to disqualify prophylactically Appellees from participating in the action.

determination should be made based upon the **trial court's** knowledge, experience, and common sense") (emphasis added). The trial court also may determine at the appropriate future juncture, after necessary discovery, whether Appellees erred by deducting attorney fees from the workers' compensation settlement check.

Moreover, the parties point to nowhere in the record where Appellees have sought any additional fees. We decline to provide an advisory opinion as to how the trial court should resolve a hypothetical future motion for additional attorney fees. "A court is precluded from deciding questions which may never arise or which are merely advisory, academic, hypothetical, incidental or remote, or which will not be decisive of a present controversy." *Berger Family Real Estate, LLC v. City of Covington*, 464 S.W.3d 160, 166 (Ky. App. 2015) (internal quotation marks, brackets, and citations omitted).

Finally, we agree with Appellees that the trial court properly granted summary judgment on Appellants' other professional malpractice claims based upon a lack of duty owed by Appellees to Appellants. Under Kentucky precedent, an attorney hired by a fiduciary, such as an administrator, does not have an attorney-client relationship with an estate's beneficiaries. *Kentucky Bar Ass'n v. Fernandez*, 397 S.W.3d 383, 392 (Ky. 2013) ("It is our view that Respondent did not have an attorney-client relationship with the beneficiaries, and therefore she did not owe the beneficiaries the same duties she owed to a client."); *Kentucky Bar*

*Ass'n v. Roberts*, 431 S.W.3d 400, 417 (Ky. 2014) ("Usually, an attorney for the representative of an estate is not also the attorney for the beneficiaries. Such an attorney owes duties only to the representative and does not have a fiduciary obligation to the beneficiaries.") (Noble, J., concurring in part and dissenting in part); Kentucky Bar Ass'n, Ethics Op. KBA E-401, p. 5 (1997) (as amended in September 2019) ("1. In representing a fiduciary the lawyer's client relationship is with the fiduciary and not with the trust or estate, nor with the beneficiaries of a trust or estate. 2. The fact that a fiduciary has obligations to the beneficiaries of the trust or estate does not in itself either expand or limit the lawyer's obligations to the fiduciary under the Rules of Professional Conduct, nor impose on the lawyer obligations toward the beneficiaries that the lawyer would not have toward other third parties.").[25] Accordingly, the trial court properly found that Appellees owed Appellants no duties (other than the aforementioned handling of the wrongful death claim). Thus, we affirm the trial court's decision to grant summary judgment to Appellees on the breach of fiduciary duty/malpractice claims not stemming from Appellees' handling of the wrongful death claim.

---

[25] KBA E-401 may be viewed at https://cdn.ymaws.com/www.kybar.org/resource/resmgr/Ethics Opinions_(Part_2)_/kba_e-401.pdf (last visited Nov. 21, 2024).

**Appeal No. 2023-CA-1369-MR**

Before we begin our analysis, we shall briefly relate the relevant factual and procedural happenings which occurred after the notice of appeal was filed in Appeal No. 2022-CA-0509-MR. Justin, individually and as administrator of the Estate, asked the trial court to order Joshua to sit for a deposition. The trial court granted that motion, and Joshua was deposed in July 2023.

Slightly less than a month later, Justin and the Estate filed a motion for post-judgment relief under CR 60.02. The entire basis of that motion was Joshua's deposition testimony. Briefly, Joshua was homeless, having recently been released from prison due to drug-related charges. Joshua testified that he had been deeply addicted to methamphetamines for years, memorably stating that he had been "higher than a bat through the whole [litigation] process" so his memory was "kind of blurry . . . ." However, he testified that he had been a functioning addict so others may not have realized the nature of his addiction.

Joshua's admittedly profound addiction and resultant memory issues rendered his testimony tentative, or even somewhat contradictory, at times and so it is not a firm foundation for upending a long final judgment. Nonetheless, we shall briefly examine Appellants' arguments, which we perceive to be entirely based upon Joshua's testimony.

Joshua repeatedly expressed dissatisfaction with the representation provided by Morgan & Morgan. He admitted depositing the check for the balance of the workers' compensation settlement and not distributing their share of the proceeds to Justin or Abigail. Joshua testified that he was "pretty sure" that the closing statement prepared by Morgan & Morgan detailing the workers' compensation settlement, including the attorney fee deduction, did not bear his actual signature. He testified that he did not enter an agreement with Morgan & Morgan to resolve a workers' compensation claim. He also stated that Morgan & Morgan had employed an unnamed relative of the driver whose vehicle fatally collided with Frank's.

The post-deposition CR 60.02 motion made the following allegations. First, Morgan & Morgan did not have a contract with the Estate regarding a workers' compensation claim. At a hearing held by the trial court, Justin's counsel made plain that the remedy sought was the return of attorney fees taken by Morgan & Morgan from the workers' compensation settlement because the balance of the proceeds due Justin and Abigail from the workers' compensation settlement had been accounted for via distribution of the wrongful death action settlement proceeds. In other words, Justin did not attack the amount of the workers' compensation settlement. Second, Morgan & Morgan had a conflict of interest because it employed a relative of the driver whose vehicle fatally collided with

Frank's. Therefore, Justin sought relief under CR 60.02(d), which allows post-judgment relief for "fraud affecting the proceedings, other than perjury or falsified evidence[.]" Finally, Justin sought relief under the catchall provisions of CR 60.02(f), which allows post-judgment relief based on "any other reason of an extraordinary nature justifying relief."

Notably, despite the fact that the motion was **entirely** based on Joshua's then-recent deposition, Justin did not seek relief under CR 60.02(b), which allows issuance of post-judgment relief based on "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59.02 [*i.e.*, within ten days after the entry of judgment][.]" CR 60.02 sets forth a strict one-year time limit for relief based upon newly discovered evidence but more leniently allows relief for fraud and extraordinary reasons so long as the motion is "made within a reasonable time . . . ." At the hearing on Justin's CR 60.02 motion, Morgan & Morgan's counsel explicitly argued that Justin had waited too long to seek relief because the CR 60.02 motion was filed more than a year after the issuance of the judgment at issue.

The trial court denied the CR 60.02 motion. Justin, on behalf of himself and the Estate, then filed Appeal No. 2023-CA-1369-MR.[26] As with the first appeal, Joshua is not a named appellee in this second appeal.

Relief under CR 60.02 is reserved for exceptional circumstances upon a "clear showing of extraordinary and compelling equities . . . ." *Carroll v. Carroll*, 569 S.W.3d 415, 417 (Ky. App. 2019). We review a trial court's decision resolving a CR 60.02 motion under the deferential abuse of discretion standard. *See, e.g.*, *Priddy v. Commonwealth*, 629 S.W.3d 14, 17 (Ky. App. 2021).

We begin by noting that Joshua's affidavit reinforces our prior conclusion that the issue regarding Morgan & Morgan's allegedly improperly having taken an attorney fee from the workers' compensation settlement must be addressed further on remand. Of course, all parties may have an opportunity in discovery to obtain evidence supporting their respective positions, so we express no opinion on the ultimate outcome of that dispute. Instead, we merely reiterate our core conclusion that summary judgment on that issue was improper.[27]

---

[26] Justin has apparently been replaced as administrator of Frank's Estate, but that replacement does not substantively impact our analysis.

[27] We also reiterate our prior conclusion, which is essentially unaffected by Joshua's deposition testimony, that summary judgment was improper on the claims regarding whether Morgan & Morgan violated any professional duties towards Justin and Abigail vis-à-vis the wrongful death action.

We may not, at least at this stage, place any controlling weight on the allegations that Morgan & Morgan had a conflict of interest. We take no position on whether Appellants may explore this issue further on remand but, at this stage, the speculative allegation that Morgan & Morgan had a conflict of interest because it employed an unknown person in an unknown position who had an unknown familial relationship with a driver involved in Frank's fatal collision is far, far too vague and speculative to form a proper basis for CR 60.02 relief.

We agree with Appellees that the non-fraud allegations in the CR 60.02 motion are untimely.[28] Thus, we decline to burden this already quite lengthy opinion by addressing Appellees' many other procedural-type arguments.

A trial court may not "invoke the exceptional or extraordinary circumstances basis to set aside a judgment pursuant to . . . CR 60.02(f) . . . when the facts presented actually fit within one of the other enumerated bases for relief in which the trial court's exercise of power is limited to one year following entry of judgment[.]" *Asset Acceptance, LLC v. Moberly*, 241 S.W.3d 329, 333 (Ky. 2007). *See also, e.g.*, *Alliant Hosps., Inc. v. Benham*, 105 S.W.3d 473, 479 (Ky. App.

---

[28] Though the trial court did not expressly deny the motion on timeliness grounds, we may affirm on that basis. *Reyna v. Commonwealth*, 217 S.W.3d 274, 276 (Ky. App. 2007) ("Although not stated as reason for the denial of his CR 60.02(f), the trial court would certainly have been within its discretion had it held that the motion was not brought within a reasonable time."); *Mark D. Dean, P.S.C. v. Commonwealth Bank & Tr. Co.*, 434 S.W.3d 489, 496 (Ky. 2014) ("If an appellate court is aware of a reason to affirm the lower court's decision, it must do so, even if on different grounds.").

2003) ("The point is that subsection (f) was not intended to provide a means for evading the strictures of the other subsections.").

Justin has referred to Joshua's testimony as new evidence. We agree. Therefore, the deposition falls within CR 60.02(b), which allows relief from a judgment based on "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59.02[.]" Since the basis for the motion is Joshua's post-judgment deposition, it appears inarguable to us that the motion is based on newly discovered evidence. As such, it must be evaluated under CR 60.02(b), not CR 60.02(f).

The fact that the motion properly falls under CR 60.02(b) means it is untimely. Appellants have not explained why they could not have deposed Joshua within one year of the issuance of the judgment – *i.e.*, they could have obtained the evidence within the one-year limitations period had they acted with due diligence. We do not know the precise dates when Joshua was incarcerated. Nonetheless, even assuming for the sake of argument that he was incarcerated during at least some of that one-year period, Appellants nevertheless could have timely sought permission to depose him from his place of incarceration. *See, e.g.*, CR 17.04(1) ("Actions involving adult prisoners confined either within or without the State may be brought or defended by the prisoner."); CR 30.01 ("The deposition of a person confined in prison may be taken only by leave of court on such terms as the court

prescribes."). Obviously, incarceration is a logistical impediment to taking a deposition, but it is not an insurmountable barrier. Joshua's identity was known. Joshua's significant involvement in the allegations underlying these appeals was known. In sum, Appellants have not shown they were unable to depose Joshua within the one-year deadline for seeking relief under CR 60.02(b).

Relief may not be granted under CR 60.02(f) if the motion falls within any other subsections of CR 60.02. *Benham*, 105 S.W.3d at 479. Courts must not allow a party to use subsection (f) as a means to avoid the time limitations which apply to other subsections. *Asset Acceptance, LLC*, 241 S.W.3d at 332. That attempt to sidestep the one-year limitations period is precisely what occurred here.

Because the motion was not filed within a year of the issuance of the judgment which it attacks, it is untimely under the plain language of CR 60.02. Therefore, the trial court did not abuse its discretion by denying the untimely, mislabeled CR 60.02(f) claims for relief.

Finally, we perceive no abuse of discretion in the trial court's denial of the fraud allegations in the CR 60.02 motion. CR 60.02(d) allows relief for "fraud affecting the proceedings, other than perjury or falsified evidence[.]" There is no fixed time limit for seeking relief under that subsection.

However, Joshua's deposition does not alter our prior conclusion that the complaint fails to set forth adequately a cause of action based on fraud.

Joshua's post-judgment deposition does not cure a fatally defective, insufficient complaint. "Bare allegations will not suffice to establish 'fraud affecting the proceedings.'" *McMurry v. McMurry*, 957 S.W.2d 731, 733 (Ky. App. 1997). We reiterate our prior ruling that fraud allegations require more detailed pleadings than the scattershot, vague allegations presented in Justin's complaint. Standing alone, Joshua's deposition testimony cannot overcome the fatally terse complaint.

## CONCLUSION

The McCracken Circuit Court's decision to grant summary judgment to Appellees is vacated in two respects: 1) regarding the claim that Appellees improperly kept portions of the lump sum workers' compensation settlement as attorney fees; and 2) regarding the claims of malpractice stemming from Appellees' handling of the wrongful death claim. Those two discrete claims are remanded for further proceedings consistent with this Opinion. In all other respects, the McCracken Circuit Court is affirmed.

JONES, A., JUDGE, CONCURS IN RESULT ONLY.

TAYLOR, JUDGE, CONCURS IN RESULT ONLY.

BRIEFS FOR APPELLANTS:

Connor M. Breen
Richard M. Breen
Louisville, Kentucky

BRIEF FOR APPELLEES:

Philip M. Longmeyer
Christopher S. Zelli
Louisville, Kentucky